Jenckes v. Jenckes et al.

---

JENCKES v. JENCKES ET AL.

[No. 17,764.   Filed September 24, 1896.]

MECHANIC'S LIEN.—*Who May Hold Lien.—When Lien Lost.*—The mechanic's lien law was enacted for the benefit of contractors, mechanics, laborers, and materialmen and when payment is made to such persons by the proprietor himself or by any one else on his order, the right to a lien under the statute becomes at once extinguished.

SAME.—*Mortgage.—Priority.*—Under section 3350, Burns' R. S. 1894 (section 2931, R. S. 1881), a mortgage not recorded until several months after its execution and after rights to mechanic's liens had been created against the property so mortgaged, is inferior to such liens although notice of them was not filed until after the mortgage was recorded.

SAME.—*Mortgage.—Priority.*—Where one acquires a mortgage lien on property with knowledge of the uses and purposes to which such property was applied by its owner, and with notice that under the statute the mortgaged property was liable to be subjected to after acquired liens for labor and material, or, in case of failing circumstances of mortgagor, to claims which would be preferred debts, whether notice of liens should be filed or not, such statutory provisions enter into and form a part of the mortgage, and the mortgage lien is subject to such statutory liens as may thereafter attach to the property.

SAME.—*Notice.—When not Necessary.—Statute Construed.*—Under section 7255 Burns' R. S. 1894, when the debtor is in failing circumstances the filing of notice of a mechanic's lien is dispensed with, and all claims become preferred debts as fully as if they had been made liens by notice duly filed.

From the Henry Circuit Court. *Affirmed in part and reversed in part.*

*M. E. Forkner,* for appellant.

*Fishback & Kappes, L. P. Newby, J. M. Morris, J. L. Lockridge, W. O. Barnard,* and *Brown & Brown,* for appellees.

HOWARD, J.—On this appeal, the controversy is between the appellant, on the one side, as holder of a promissory note secured by mortgage on real estate of the appellee, Joseph S. Jenckes; and, on the other side, certain of the appellees who hold claims against the said Joseph S. Jenckes for work and labor done and materials furnished for him in the construction and operation of a brick making factory upon his said real estate.

From the finding of the facts made by the court, at the request of the parties, it appears: That, on the 8th day of December, 1892, the said Joseph S. Jenckes, being in need of money to be used in the construction of his said factory and to pay liabilities already incurred therein, borrowed of the appellant, his wife, the sum of $2,500.00, which was then paid over to him by her out of her sole and separate estate; that, at the time of borrowing said money, it was intended to be a temporary loan, but on December 24, 1892, the time of the loan was extended to one year, and the note and mortgage in suit were given to her by her said husband in security for said debt; but the said mortgage was not placed upon record until August 7, 1893; that the mortgage was given and received for the said consideration and in good faith, without any intent by either of said parties to cheat, hinder, or delay the creditors of Joseph S. Jenckes in the collection of their debts against him, or in any other way; that the

VOL. 145—40

factory was completed and put in operation by the spring of 1893, and all the money for which the mortgage was given was expended by Joseph S. Jenckes in paying for labor, material and machinery in the construction of said plant. It further appears that several of the appellees named, being cross-complainants on the trial, performed work for the said Joseph S. Jenckes in the construction and operation of said brick plant, and received payments therefor from time to time, leaving balances named due them severally at the date of the bringing of this action. Like findings are made in favor of other appellees, also cross-complainants below, for materials furnished by them from time to time and used in the construction of said plant. It is also found that still others of the appellees, being likewise cross-complainants, had similar balances against Joseph S. Jenckes, due them severally for merchandise furnished and sums paid to laborers in said factory on his orders.

It was further found by the court, "That on the 7th day of August, 1893 [the day on which appellant's mortgage was filed for record in the recorder's office], and continuously from that time, the said Joseph S. Jenckes was in embarrassed and failing circumstances, and now is insolvent."

The court found, as a conclusion of law, that the said cross-complainants were severally entitled to recover personal judgments against Joseph S. Jenckes for the balances so found due them respectively; and concluded further in favor of said cross-complainants, "that they and each of them are entitled to hold and do hold a lien for the payment of the sum found to be due each of them respectively upon the following described real estate [naming the land in controversy], as well as upon the buildings and brick factory thereon, and all the machinery and tools therein located

and used in the business thereof; and that the liens so held by them respectively are each senior and superior to the lien of the mortgage of Mary I. Jenckes."

There was also a conclusion by the court, "That the law is with Mary I. Jenckes as to Joseph S. Jenckes, and that she is entitled to a personal judgment against him for the amount due her from him upon the note sued upon, and to a decree of foreclosure of the mortgage given to secure the same [naming also the amount due her and describing the land aforesaid, to be sold under foreclosure of the mortgage]; and I find that the lien of her mortgage is junior and inferior to the lien of the persons above named and set forth."

The questions discussed by counsel relate wholly to the correctness of the conclusions of law so made by the court.

It is provided in section 1, of the Mechanic's Lien Law in force March 6, 1883 (Acts 1883, p. 140), as amended March 9, 1889 (Acts 1889, p. 257, section 7255, R. S. 1894), under which statute this action was tried: "That contractors, sub-contractors, mechanics, journeymen, laborers and all persons performing labor or furnishing material or machinery for erecting, altering, repairing, or removing any house, mill, manufactory or other building, bridge, reservoir, system of water-works, or other structure, may have a lien separately or jointly upon the house, mill, manufactory or other building, bridge, reservoir, system of water-works, or other structure which they may have erected, altered, repaired or removed, or for which they may have furnished material or machinery of any description and on the interests of the owner of the lot or land on which it stands, or with which it is connected, to the extent of the value of any labor done, or material or machinery furnished, or both, and all claims for wages for mechanics and laborers employed

in or about any shop, mill, wareroom, storeroom or manufactory, shall be a first lien upon all the machinery, tools, stock of material, or work finished or unfinished, located in or about such shop, mill, storeroom, or manufactory, or used in the business thereof; and should the person, firm or corporation be in failing circumstances, the above mentioned claim shall be preferred debts, whether notice of lien be filed or not."

And in section 3 of said act, as also amended March 9, 1889 (Acts 1889, p. 258, section 7257, R. S. 1894), it is further provided that: "Any person wishing to acquire such lien upon any property, whether his claim be due or not, shall file in the recorder's office of the county, at any time within sixty days after performing such labor or furnishing such materials, or machinery, or article, or thing or consideration, or rendering such consideration described in section 1, notice of his intention to hold a lien upon such property for the amount of his claim, specifically setting forth the amount claimed, and giving a substantial description of such lot or land on which the house, mill, manufactory, or other building, bridge, reservoir, system of water-works or other structure may stand or be connected with or to which it may be removed. Any description of the lot or land in a notice of a lien will be sufficient if, from such description, or any reference therein, the lot or land can be identified."

The mechanic's lien law was enacted for the benefit of contractors, mechanics, laborers, and materialmen; and from any view that might be taken of the facts found by the court in this case it does not appear that these cross-complainants, who upon orders of Joseph S. Jenckes furnished merchandise or made payments to the laborers upon or in and about his factory could be entitled to any lien upon said factory or the land

Jenckes *v.* Jenckes *et al.*

upon which it stands. The lien is given to the laborer or materialman "to the extent of the value of any labor done, or material or machinery furnished," in the "erecting, altering, repairing, or moving" of any house or other structure; and if such laborer or materialman is paid either by the proprietor himself or by any one else on his order, the right to a lien under the statute becomes at once extinguished. No question as to assignment of lien is presented by the findings.

As to the other cross-complainants, however, those who furnished labor or material for the erection of the factory, there is no doubt that they were entitled to a lien upon the building and on the interests of Joseph S. Jenckes in the land upon which it stands, and also that the "mechanics and laborers employed in or about" said factory were entitled to "a first lien upon all the machinery, tools, stock, material, or work finished or unfinished located in or about such * * * manufactory, or used in the business thereof," for the several balances due them.

But because said cross-complainants were entitled to such liens, it does not follow that they acquired them. Section 1 of the statute above quoted states the conditions that give a right to the lien; but section 3 of the same statute, referring directly to the provisions of section 1, declares what steps must be taken to acquire such lien. Within sixty days after performing such labor or furnishing such material, the person entitled to the lien must file in the recorder's office "notice of his intention to hold a lien upon such property for the amount of his claim." No such notice was given in this case.

Had such notice been given, there is no doubt that the lien would have related back to the time when work was begun or material furnished. Section 4 of

the lien law, *supra* (section 7258, R. S. 1894); *Mark* v. *Murphy*, 76 Ind. 534.

Moreover, as appellant's mortgage was not filed in the recorder's office until August 7, 1893, the lien for labor and material would have related back to that date and to the time when the first labor was performed or material furnished, provided the notice were given within sixty days after August 7, 1893, and the lien thus perfected would have been prior to the lien of said mortgage; for appellant could not, by keeping her mortgage off record, deprive those not knowing of its existence of the right to their liens as against her. Such concealment of her mortgage would have been fraudulent as against such lien holders. Section 3350, R. S. 1894 (section 2931, R. S. 1881); *Jeffersonville Water Co.* v. *Riter*, 138 Ind. 170.

In addition, it is to be said further that, in so far as such debts are due to mechanics and laborers, it is particularly provided in said section 1 of the statute, that "all claims for wages for mechanics and laborers employed in or about any shop, mill, wareroom, storeroom, or manufactory, shall be a first lien upon all the machinery, tools, stock of material, or work finished or unfinished, located in or about such shop, mill, wareroom, storeroom, or manufactory, or used in the business thereof."

The contention of counsel for appellees, however, is that, in this case, although no notice of an intention to hold a lien was given, yet, under the law and the facts as found by the court, the lien is given without notice; and counsel rely in particular upon the concluding clause of section 1 of the mechanic's lien law, already cited, to-wit: "And should the person, firm or corporation be in failing circumstances, the above mentioned claims shall be preferred debts, whether notice of lien be filed or not."

It was specially found, in this case, that at the date of the filing of appellant's mortgage for record, "and continuously from that time, the said Joseph S. Jenckes was in embarrassed and failing circumstances, and now is insolvent."

Counsel for appellant admits that, under this statute, if there is a fund in the hands of the court, or in the hands of a receiver, assignee, administrator or other trustee, out of which claims against the insolvent debtor are to be paid, the provision of the statue so cited makes the claims of mechanics, laborers and materialmen preferred debts, to be first paid in full as in other cases; but contends "that no specific lien attaches until the court has taken jurisdiction of the property," and that "then it attaches only upon such interests as the debtor then has."

In this case, it is found that George S. Jenckes is "in failing circumstances." Claims for labor and material are found due from him to certain of the cross-complainants. The mill, machinery, etc., for which the materials were furnished, and in and about which the labor was done, together with the land upon which they are situated, are in the hands of the court, to be sold for the payment of such obligations as they are liable for. It would seem, therefore, that the words of the statute apply to the case, that "the above mentioned claims," all the claims referred to in the section of the statute, "shall be preferred debts, whether notice of lien be filed or not." The statute in such case dispenses with the filing of notice, and, in consequence of the failing circumstances of the debtor, makes all such claims preferred debts as fully as if they had been made liens by notice duly filed. The law assumes that the labor and material have gone into the property and enhanced its value "to the extent of the value of" the labor done or the material

furnished; and, hence, th'at on the sale of such failing debtor's property this labor and material should first be paid for.

Nor is there any injustice to appellant in this. On the contrary, as said in *Warren* v. *Sohn*, 112 Ind. 213, she acquired her mortgage lien on the property with knowledge of the uses and purposes to which such property was applied by its owner, and with notice that under the statute the mortgaged property was liable to be subjected to after-acquired liens for labor and material; or in case of failing circumstances, to claims which would be preferred debts, whether notice of lien should be filed or not.

Under the repeated decisions of this court, these statutory provisions entered into and formed a part of appellant's mortgage, and she acquired her lien on the mortgaged property subject to such statutory liens as might thereafter, in the vicissitudes of the mortgagor's business, attach to such property for work and labor done or material furnished, and with notice that, in case of the debtor's failing circumstances, such latter claims might, under the statute, be "preferred debts, whether notice of lien be filed or not." *Bryson* v. *McCreary*, 102 Ind. 1; *Edwards, Tr.* v. *Johnson*, 105 Ind. 594; *Long, Ex.* v. *Straus*, 107 Ind. 94; *Owen School Tp.* v. *Hay*, 107 Ind. 351.    See also *Bass* v. *Doerman*, 112 Ind. 390.

In considering a similar statute to that now before us, it was said by this court in *Aurora Nat. Bank* v. *Black*, 125 Ind. 595: "It was the purpose of the Legislature in enacting this statute to secure to employes of corporations an efficient remedy for the collection of money due them for wages. Such statutes are not only constitutional, but they are to be liberally construed with a view of rendering effectual the purpose

of the statute." Citing *Warren* v. *Sohn,* and *Bass* v. *Doerman, supra,* and also *Pendergast* v. *Yandes, Rec.,* 124 Ind. 159, 8 L. R. A. 849.

"We are further of opinion," said the court in that case, speaking by Judge Coffey, "that the corporation could not avoid the lien given by statute by transferring its property before the notice of the intention to hold a lien was filed in the recorder's office. Such a construction of the statute would place it in the power of corporations to defeat the purpose the Legislature had in view, as they might, upon approaching insolvency, defeat such liens by selling and transferring all their property. Those dealing with such corporations must know the law and must take notice that the wages of employes is a lien upon their property, and that the title acquired by purchase or otherwise from a corporation is subject to such lien."

In *Goodbub* v. *Hornung,* 127 Ind. 181, it was held that "the above mentioned claims," as referred to in the concluding paragraph of section 1 of the statute under which this action was tried, include not only debts due laborers for wages, but also debts due mechanics, materialmen, contractors and others, as mentioned in the preceding clauses of said section. See also *McElwaine* v. *Hosey,* 135 Ind. 481.

It has been well said, following *Aurora Nat. Bank* v. *Black, supra,* that this preference is equal to a first lien upon the property and proceeds thereof, and is superior to the claim of a mortgagee or a *bona fide* purchaser without notice. Any other construction of the statute would place it in the power of the employers to defeat the purpose the legislature had in view, as they might, upon approaching insolvency, by selling and transferring their property. Like observations would, of course, apply to attempts made to defeat the pur-

pose of the legislature by mortgaging or otherwise encumbering the property.

The general purpose of the mechanic's lien law is to give laborers and materialmen the right to a lien on the property improved by them, to the extent of the value of such labor or material. The lien, the right to which is so given, as a rule, remains inchoate until notice of the intention to hold the lien is given. In case, however, the owner of the property becomes "in failing circumstances," all interests are at once precipitated; there may be no time to give notice, and, by force of the statute, all claims of laborers and materialmen become "preferred debts," or a first lien upon the property. Otherwise the purpose of the law might at any time be defeated by the embarrassment of the owner and the sudden and unexpected sale or encumbering of his property.

The law is, however, only for the benefit of "persons performing labor or furnishing material or machinery for erecting, altering, repairing or removing any house," or other structure; and for "mechanics and laborers employed in or about any shop," or other workroom named in the statute. The law is not intended to protect those who make payments to such laborers or materialmen, on order of the owner of the building or workshop, or otherwise. Business men, merchants and others who make such payments and charge them on general account to the owner of the building or shop in question, are but general creditors of such owner. Such claims may, of course, be assigned, but they carry no lien, unless a lien has first been perfected by the mechanic or materialman in whose favor the right to the lien primarily exists. The right to the lien is in the mechanic, laborer or materialman, and it is only such mechanic, laborer or materialman that may perfect the lien; and it is only

after the lien has been perfected, as in the case of any other lien, that it may be assigned.

The findings in this case show that the amounts due the cross-complainants, Oscar P. Cook, Rufus P. Walton, Claudius C. Coffin, Margaret Woods, Imla Showalter, and John V. Bouslog, are for moneys paid by them respectively on orders of Joseph S. Jenckes. These cross-complainants were not mechanics or laborers upon, in or about said brick factory; neither did they furnish material or machinery for its erection. They can therefore have no claim to a lien upon the property, nor are the amounts due them preferred debts.

The decree of the court is therefore reversed, in so far as it gives the above-named cross-complainants first liens in favor of their respective judgments. In all other respects the decree is affirmed; and the several judgments, as against Joseph S. Jenckes, are affirmed.