## WHITESELL ET AL. v. STRICKLER ET AL.

[No. 20,937.    Filed October 9, 1906.    Rehearing denied January 9, 1907.]

1. APPEAL AND ERROR.—*Exceptions.—When Several.*—An entry showing that the "court overrules the separate demurrer by each of the defendants to the amended complaint, * * * to which ruling of the court the defendants except," which entry was made pursuant to a ruling upon a demurrer in form: the defendants "each separately and severally demurs to plaintiff's complaint," etc., shows a several and not a joint exception by the defendants. *Noonan* v. *Bell*, 159 Ind. 329, and *Southern Ind. R. Co.* v. *Harrell*, 161 Ind. 689, overruled.    p. 606.

2. PLEADING.—*Demurrers.—Joinder of Parties in.*—Parties may join in a single demurrer, whether the demurrer be joint or several.    p. 607.

3. SAME. — *Demurrers.—Exceptions.—How Construed.*—Exceptions, apparently joint, will be construed in connection with the pleadings or motions upon which they are based, and if such pleadings or motions are several, such exceptions will be considered several.    p. 608.

4. APPEAL AND ERROR.—*Purpose.—Assignment of Errors.*—The purpose of an appeal is to present to the appellate court for review the precise questions ruled on by the trial court, the assignment of errors being the complaint on appeal.    p. 608.

5. SAME.—*Exceptions.—Assignment of Errors.*—Several assignments of errors on appeal present no questions where founded on a joint exception; and joint assignments present no questions where founded on several exceptions.    p. 609.

6. SAME.—*Trial Procedure.—Construction.*—Strict construction of the rules of procedure is ordinarily applied to determine the questions ruled upon by the trial court, but where two or more parties join in the same pleadings a liberal construction prevails to determine the rights of the parties therein.    p. 609.

7. PLEADING.—*Exceptions.—Presumptions.*—The presumption is that exceptions taken by a party on the trial were intended to be effectual in presenting the same questions on appeal.   p. 609.

8. DESCENT AND DISTRIBUTION.—*Decedents' Estates.—Widows.— Liberal Policy towards.*—The policy of the law of this State is to deal liberally with the widow in the distribution of the husband's estate.   p. 610.

9. WILLS.—*Widow's Election.—Decedents' Estates.*—A widow has the right, free from any misrepresentation, concealment, suppression of facts, or appeals to duty, to make her election whether to take under her husband's will.   p. 610.

10. SAME.—*Widow's Election.—Time for.*—Under §2666 Burns 1901, Acts 1885, p. 239, a widow has one year from the admission of her husband's will to probate, to elect whether she will take thereunder.   p. 610.

11. SAME.—*Widow's Election.—Duty of Courts Concerning.*— Courts will carefully scrutinize all outside influences brought to bear on a widow in order to induce her to make her election whether she will abide by, or reject, the provisions for her in the will of her husband; and if such influences were harmful, the courts will protect the widow.   p. 611.

12. SAME.—*Widow's Election.—Fiduciaries.—Burden of Proof.*— In a suit by a widow against the heirs at law of her deceased husband to set aside her election not to take under her husband's will, the burden rests upon such heirs to prove that such election was fair and equitable, and free from undue influence. p. 612.

13. PLEADING.—*Complaint.—Wills.—Widow's Election.—Setting Aside.—Fraud.*—A complaint showing that the plaintiff was a widow; that her husband had given her by his will all of his property; that her daughter and daughter's husband, who was a practicing attorney, invited her to their house, where they, together with the circuit judge whom such son-in-law had invited to be present, induced her to elect to renounce the provisions of her husband's will on the ground that he had not the mental capacity sufficient to execute same, states a cause of action for setting aside such election.   p. 612.

14. WILLS.—*Widow's Election.—Setting Aside.—Fraud of Third Party.*—That the fraud, which induced a widow's election to renounce the provisions of her husband's will, was that of a third party who received no benefits therefrom, is no defense to a suit to set aside such election.   p. 614.

15. JUDGMENT.—*Res Judicata.—What Questions are.*—A judgment is *res judicata* as to all matters litigated, or which, under the issues formed, might have been litigated.   p. 615.

16. JUDGMENT.—*Res Judicata.—Parties to the Issue.*—Rights of defendants as among themselves are not determined in an action wherein no cross pleadings are filed, a determination of such questions as to the plaintiff being insufficient to adjudicate their rights as to each other.    p. 616.

17. SAME.—*Res Judicata.—Parties.—Issues.*—To be *res judicata,* a former judgment must have been between the same parties and upon the same issues.    p. 616.

18. SAME.—*Res Judicata.—Wills.—Widow's Election.—Setting Aside.—Decedents' Estates.—Sales to Pay Debts.*—A judgment in a suit by an administrator, against the widow and other heirs, to sell his decedent's real estate to pay debts, is not *res judicata* in a subsequent suit by such widow to set aside her election to renounce the provisions of her husband's will, where no issues were formed between her and the other heirs in such former suit.    p. 616.

19. SAME.—*Res Judicata.—Partition.—Wills.—Widow's Election.—Setting Aside.*—A judgment in a suit for partition brought by the widow and three other heirs against a fourth heir of decedent, wherein no issues were formed as among the plaintiffs, is not *res judicata* as to a subsequent suit by plaintiff to set aside her election to renounce the provisions of her husband's will.    p. 617.

20. ESTOPPEL.—*In Pais.—Taking Advantage of One's Own Wrong.*—Where defendant wrongfully and fraudulently secured the plaintiff to renounce the provisions of her husband's will, defendant's purchase of the devised property at administrator's sale and expenditure of money thereon to the knowledge of plaintiff, and plaintiff's conveyance to defendant of her one-third interest in such lands in consideration of care and support, do not estop plaintiff from setting aside her election to renounce the provisions of the will and assert title to the proceeds of the property in the hands of the administrator. p. 617.

21. WILLS.—*Widow's Election.—Failure to Make.*—Failure by a widow to file her election to accept or renounce the provisions of her husband's will, within one year from the probate thereof, constitutes an election to take under such will.    p. 618.

22. SAME.—*Widow's Election.—Rescission.—Limitation of Actions.*—A widow's rescission of an election to take under her husband's will, in the absence of fraud, must be made within one year from the probate of such will.    p. 618.

23. SAME.—*Widow's Election.—Rescission.—Limitation of Actions.*—A suit by a widow to rescind her fraudulently procured election to take under the law instead of her husband's will, may

be maintained at any time within the six-year statute of limitations.  p. 619.

24.  WILLS. — *Widow's Election.* — *Fraud.* — *Laches.*—Where defendant by fraud secured her aged mother to renounce the provisions of her husband's will, a suit brought before the final settlement of his estate, and within a reasonable time after the discovery of the fraud by such mother, shows a sufficient excuse for such delay.  p. 619.

25.  ACTION.—*Causes of.*—*Concealment.*—*Fraud.*—Acts constituting a fraudulent concealment of a cause of action may precede, be concurrent with, or subsequent to, the accruing of such cause.  p. 620.

26.  SAME.—*Special Judges.*—*Change of Venue.*—*Motion to Remand.*—*Waiver.*—Where a special judge in a cause was appointed in the county where the suit was brought, and defendant, on a change of venue from such county, closed the issues in such case, he thereby waived his right to object to the person or to the regularity of the appointment of such special judge, and a motion to remand to such county should be overruled.  p. 620.

27.  COSTS. — *Action.* — *Parties.* — *Statutes.* — *Wills.*—*Widow's Election.*—*Rescission.*—Under §603 Burns 1901, §594 R. S. 1881, the trial court has the right to tax the costs of a suit to rescind a widow's election to renounce the provisions of her husband's will, against the particular defendants who fraudulently secured her to make such election.  p. 621.

28.  SAME.—*Separate Issues.*—If defendants make separate issues in a suit, the trial court has the right to apportion the costs according to the costs made on such issues.  p. 621.

From Hancock Circuit Court; *Daniel L. Wilson,* Special Judge.

Suit by Elizabeth Strickler against Elmira J. Whitesell and others.  From a decree for plaintiff, defendants, except one, appeal.  Transferred from Appellate Court under subd. 2, §1337j Burns 1901, Acts 1901, p. 565, §10.  *Affirmed.*

*Samuel C. Whitesell, Downing & Hough, A. C. Lindemuth* and *Robbins & Starr,* for appellants.

*B. F. Mason* and *Thomas J. Study,* for appellee Elizabeth Strickler.

HADLEY, J.—Amos Strickler died testate in Wayne county, Indiana, October 23, 1899. He executed his will on March 10, 1889. On November 6, 1899, the will was proved, admitted to probate, and duly recorded. By the terms of his will, after providing for the payment of all his debts, he bequeathed to his widow, appellee Elizabeth Strickler, all of his estate both real and personal. The value of the estate thus bequeathed was about $10,000. Besides his widow, he left, as his only heirs, the defendants, Elmira J. Whitesell, his daughter, Minos Strickler, his son, and Russell Strickler, his grandson. After the probate of the will, the widow elected to renounce the will and take under the statute. Appellant Henry C. Starr was thereupon appointed administrator of the estate, gave bond, and proceeded to the settlement of his trust, and has converted all of the estate, both real and personal, into cash, and has the proceeds thereof, less expenses, etc., in his possession. The widow, who was the plaintiff below, brought this suit to set aside her election to take under the statute, to the end that she might take under the will. She bases her right to maintain the suit upon the false and fraudulent representations made by the appellees Elmira J. Whitesell and her husband, Samuel C. Whitesell, and the judge of the Wayne Circuit Court. The prayer of the complaint is that appellee's said election to reject the will and take under the statute be canceled and set aside, and that the administrator of the estate be ordered and directed to pay to her all of the money in his hands after the payment of debts and costs of administration.

All of the heirs of the decedent, the administrator of the estate, and the husband of Elmira J. were made parties defendant, and appeared to the suit, and all demurred to the complaint. The demurrer to the complaint, omitting the formal parts thereof and the names of the demurring parties, is in the following words: "Each separately and severally demurs to the plaintiff's

complaint, and for cause of demurrer says that said amended complaint does not state facts sufficient to constitute a cause of action." The record shows that the "court overrules the separate demurrer by each of the defendants to the amended complaint, * * * to which ruling of the court the defendants object and except." All of the defendants below, except Minos O. Strickler, filed answers. A demurrer was addressed to each affirmative paragraph and each of said demurrers was sustained. All of the defendants who appeared to the suit thereupon withdrew their respective answers of general denial and elected to stand upon the affirmative answers. The defendant Minos O. Strickler, who is made an appellee here, was duly defaulted. There was then a finding and judgment for the plaintiff, setting aside her election to take under the law.

(1) It is earnestly contended by counsel for appellee that under the exceptions reserved to the rulings on the demurrers to the complaint, and the several assignments of error thereon, no question upon the demurrers is presented for decision, because the record discloses separate assignments of error based upon joint exceptions. The assignments on the ruling upon the demurrers to the complaint, as made, are separate and not joint. It will be noticed from the above quotation from the record that the exception reserved was, as termed, "by the defendants." From the nature of the proceedings up to this point, we think it is misleading and improper to construe the plural pronoun employed by the clerk in recording the minute, as characterizing the act of the defendants as being joint.

When two or more parties desire to demur separately to the same pleading, on the same ground, the law does not require each to file a separate paper. If they choose, 2. all may act separately in demurring, and yet unite in the same paper, provided it is clearly stated therein that they act severally and not jointly.

The demurrer under consideration, after setting forth the names of all the defendants as demurring parties, proceeds, "each separately and severally demurs 3. * * * and for cause of demurrer says," etc.

Not only do they employ the distributive word "each" and the singular verbs "demurs" and "says," but the association of these with the words "separately" and "severally" make it too plain for argument that the paper was intended to be, and in fact was, the several demurrer of each of the defendants. It was so understood by the court, for the record goes on, "and thereupon the court overrules the separate demurrer by each of the defendants to the complaint, to which ruling of the court the defendants except." What ruling is here referred to as reserved? Certainly no other than that described immediately preceding. It could have been no other, because the record shows there was no other ruling on demurrer to the complaint. That ruling, though a separate act, and in a sense in gross, is as clearly distributive in effect as if the court had repeated and announced separately the ruling against each of the six demurrants; and, the defendants all being severally, though in the same way, affected by the ruling, we see no reason why they might not unite in reserving several and appropriate exceptions. *Stamets* v. *Mitchenor* (1906), 165 Ind. 672. Furthermore, under these facts, we think the words "defendants except" mean the same as if the clerk had written, "each of the defendants excepts," which, without any question, should be construed distributively.

An appeal is allowed by the statute solely for the correction of errors of the trial court. The assignment of error is termed the complaint in this court, and must be 4. consistent, and correctly and specifically present to the court, in manner and form as presented to the lower court, the particular rulings and subject-matter

thereof, as shown by the record to have been made and excepted to.

As a joint complaint in the trial court must be good as to all who join or good as to none, so a joint assignment to be sufficient must be founded upon a ruling against all, and which must be erroneous as to all, or it will be held so as to none. *Orton* v. *Tilden* (1887), 110 Ind. 131, and cases cited. Likewise a separate assignment, founded upon a joint ruling against one or more appellants, presents no question to this court. *Green* v. *Heston* (1900), 154 Ind. 127, and cases cited. It is the same questions that were ruled upon by the trial court, presented here in the same way, that are reviewable on appeal.

In identifying the question appealed, it is plain that the rules of procedure should be strictly construed, in fairness to the trial court, if for no better reason, but, as in this case, when two or more persons desire to take the same step, but to act separately, and for convenience unite in presenting one paper, and the court by a single action rules against all, the exceptions to the ruling as recorded by the clerk should be liberally construed with a view of according an appropriate exception to each exceptor. And such exception should be allowed unless clearly incompatible with the record.

When an appellant excepts to a ruling for the purpose of presenting it to a court of review, it should at least be presumed that his exception was intended to be in the capacity and relation that would make it effective. The assignments of error predicated upon the ruling on the demurrers to the complaint are several, and we think the same are supported by proper exceptions reserved at the trial. Our holdings on exceptions reserved to rulings on demurrer to the complaint in *Noonan* v. *Bell* (1902), 159 Ind. 329, and *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 63 L. R. A. 460, while perhaps the logical

result of prior rulings, if pressed to an extreme, appear to us, on further consideration, as too restricted, and the same are now disapproved.

(2) Was the complaint sufficient? It counts upon fraud and undue influence of the defendants Whitesell and Whitesell and the judge of the Wayne Circuit Court, whereby the plaintiff was induced to renounce the provisions made for her by the will of her deceased husband, and in lieu thereof accept her portion of her husband's estate under the law.

It was held in *Garn* v. *Garn* (1893), 135 Ind. 687, that the policy of the law of this State has ever been to deal liberally with widows in the distribution of their husbands' estates. In harmony with this doctrine the statute guarantees to a widow the right of election between the provisions of her husband's will and those provided by the statute, and the right to make the same understandingly. No misrepresentation, no concealment or suppression of the facts, no appeal to family duty or obligation, will be allowed by the court to thwart her free will, and prevent her from arriving at an intelligent decision. As was said in the case of *Garn* v. *Garn, supra:* "Nothing less than an act intelligently done will be sufficient. She should know, and if she does not, she should be informed, of the relative values of the properties between which she is empowered to choose; in other words, her election must be made with a full knowledge of the facts. The rule applies with special force where the widow is called upon, as in this case, to make her election shortly after her husband's death."

The law recognizes the tender relation of husband and wife, and the usual liberality of a husband when he undertakes by will to make provision for the future comfort and support of the wife. Responding to this sentiment, the statute now in force—§2666 Burns 1901, Acts 1885, p. 239—is so constructed that a widow will be held to have chosen under the will, unless within

one year from probate she shall file with the clerk her solemn declaration of election to take under the law. In other words, if a widow is passive and takes no action at all with respect to her election, she will conclusively be presumed to be content with the will.

It is a well-known fact that a wife who has attained to old age before the death of the husband, and who has given her life to domestic duties, and had little or no experience in business affairs, or in ascertaining the current values of property, when suddenly bereaved and called upon to choose between two portions of the family estate, is, in most instances, as helpless as a minor, and feels wholly incapable of acting upon her own judgment in matters of importance. In such emergencies the natural and usual resort is to those possessed of her confidence, and whom she believes to be competent and interested in her welfare. In situations like this, and in all cases where the relations in life are such that influence is acquired by one and confidence reposed by another, so as to give rise to opportunity for imposition or undue influence, such as arise between guardian and ward, parent and child, husband and wife, principal and agent, and the like, and where one of the parties, by reason of his surroundings, is unable to treat with the other upon terms of equality, courts of equity will carefully scrutinize the dealings between them and compel restoration in the absence of absolute fairness. In such cases, says Judge Story, the one subject to undue influence "has no free will, but stands *in vinculis*. And the constant rule in equity is, that where a party is not a free agent and is not equal to protecting himself, the court will protect him." 1 Story, Equity (13th ed.), §239. And this rule in equity is not confined to formal relations, such as those alluded to, but extends to every case where confidence exists on one hand and influence on the other, "from whatever cause they may spring." *M'Cormick* v. *Malin* (1841), 5 Blackf. 509, 522; *Burden* v. *Burden* (1895), 141 Ind. 471, 476; *Culley*

v. *Jones* (1905), 164 Ind. 168; *Wheeler* v. *Smith* (1850), 9 How. 55, 82, 13 L. Ed. 44; Bispham, Prin. of Eq. (7th ed.), §232; Kerr, Fraud and Mistake (2d ed.), 166.

The rule we have been considering does not deny the power of the parties to contract, nor denounce all dealings between them as fraudulent, but in every such case it rests upon the superior, or party who has taken the benefit, to prove that the transaction was in every respect fair and equitable, and the free consent of him subject to the undue influence. See above authorities. *Holt* v. *Agnew* (1880), 67 Ala. 360, 368; Browne, Parol Ev., §38.

These principles embrace the substance of the complaint. It is set forth that the plaintiff is an old woman, ignorant of the law, of value, of business, and lacking the degree of mental capacity necessary to make a will; that Elmira J. Whitesell is her daughter; that Samuel C. Whitesell is Elmira's husband, a skilful lawyer, and a practicing attorney in Wayne county; that by the provisions of the will the whole estate of Amos Strickler was bequeathed to the plaintiff; that her husband requested her to accept the provisions of the will, and she desired and intended to do so; that within a few days after the death of her husband and the probate of the will, to wit, within twelve days after the probate, Samuel C. and Elmira Whitesell—to enable Elmira to inherit a large portion of her father's estate—repeatedly represented to the plaintiff that the will of Amos Strickler was invalid and void for unsoundness of mind of the testator, and could be set aside, and further represented to her that the judge of the Wayne Circuit Court, a special friend and associate of Samuel C. Whitesell, desired to see and talk with her concerning her deceased husband's estate; that, relying upon said representation, she went to the city of Richmond and to the house of Elmira J. and Samuel C. Whitesell, and after night on the day of her arrival Samuel C. Whitesell brought said

judge to his house, and Samuel C. and his wife and the judge discussed with the plaintiff the mental condition of her husband when he made his will, and declared and asserted that he was incapable of making a will, that his will was invalid, and that she might better take her portion under the law; that she believed and relied upon what they claimed and asserted concerning her deceased husband, and was induced thereby to execute, and on the following day, to wit, November 18, 1899, did execute, and file with the clerk, her election to renounce the will and take under the law. It is difficult to conceive of an influence more potential than that exercised against the plaintiff as here alleged: Mr. Whitesell, the son-in-law, a practicing lawyer of the county, and reasonably supposed to know, or at least she had the right to presume he knew, whether, under the law and facts stated, the will was valid; his wife, her daughter, who should naturally feel the most unselfish desire for the plaintiff's future comfort and support, and when there is added the counsel and advice of the resident circuit judge, the influence brought to bear against the widow seems practically irresistible. If the will was invalid it could convey no rights, and all might be lost, and, in her lonely, inexperienced, uninformed, hesitating condition, the advice of the judge alone would hardly fail to control her action for good or ill, and for one as readily as the other. Even if there was no personal acquaintance—which is not probable in this case—it was reasonable for her to suppose, from the honorable and responsible position occupied, that the judge was a man of legal learning, and of the highest integrity. She also had the right to regard him as the final arbiter of all questions relating to the settlement of her husband's estate, and in determining the validity of her husband's will in any suit or contest that might be brought. Also the right to assume, from the request for the interview with her, that he felt an interest in her welfare, and would advise her to

that course which was best for her to take from the perplexing situation.

It is absurd to say that the widow was on equal terms with her advisers, or in position, as against their contrary advice, to form an independent and intelligent judgment. What the judge said to her and his advice to take under the law, under the circumstances alleged, was calculated to secure acceptance and obedience as promptly as would his judgment announced from the bench; and, resulting in detriment to the widow and in benefit to the appellants, no evidence that we can conceive of can be brought to relieve the transaction of fraud. But it should be borne in mind that what is here said concerning the judge is based upon averments of the complaint, and not upon facts proved, or even testified to. It is, too, but just to the eminent jurist referred to, to state that he is a judge of long experience, and of irreproachable character, and has had no opportunity of meeting the charge. We therefore indulge no adverse presumption in relation thereto, except such as the law requires in testing the sufficiency of the complaint.

Because the judge derived no benefits from the plaintiff's election to take under the law, makes no difference. The transaction is not purged of its fraud by showing 14. that it was brought about by a third person. A delivery of the fruits to a stranger does not purify an evil deed. "I should regret," says Lord Eldon, in *Huguenin* v. *Baseley* (1807), 14 Ves. 273, 289, "that any doubt could be entertained, whether it is not competent to a court of equity to take away from third persons the benefits which they have derived from the fraud, imposition, or undue influence of others." It is not by whom, but the manner of getting, which constitutes the question. *Ranken* v. *Patton* (1877), 65 Mo. 378, 415. It follows that we hold the complaint sufficient, and the demurrers thereto properly overruled.

(3) The defendant Minos O. Strickler made default. The administrator filed a separate answer in two paragraphs—former adjudication, and the statute of the limitations of one year. Elmira J. and Samuel C. Whitesell filed a joint and separate answer in two affirmative paragraphs. The second, former adjudication. The third, estoppel. Elmira J. answered separately in two paragraphs, former recovery and estoppel, respectively. Russell Strickler, by his guardian, answered in two paragraphs, of former adjudication. The administrator's third paragraph and the joint answer of the Whitesells and Russell Strickler set up that the cause of action had not accrued to the plaintiff within one year from the probating of the will. To each of these answers a demurrer was sustained. The Whitesells in their second, Russell Strickler in his first, and the administrator in his second paragraph, set up the same facts as res adjudicata. In substance they alleged that the plaintiff elected to take under the law, and the administrator thereupon filed his petition to sell the undivided two-thirds of the real estate to pay the debts of the estate. The plaintiff was made a party and filed an answer to the effect that she was the owner of an undivided one-third of the lands and that she was not paid $340 of her statutory allowance as widow, which she requested should be declared a lien on the property sold. Further proceedings are alleged that resulted in an order and sale of the undivided two-thirds of the home farm to the defendant Elmira J. Whitesell for $3,610 and the balance of the land for $2,150 to a third person.

The facts pleaded in the answers last above described fall far short of being sufficient as answers of former adjudication. The general rule is that the judgment in the former action settles all matters of controversy involved in the issues between the parties to the action; that is, all matters litigated, or which might

have been litigated within the issues as they were made, or tendered by the pleadings in the case, but not matters which might have been litigated under such issues formed by additional pleading. *Finley* v. *Cathcart* (1898), 149 Ind. 470, 63 Am. St. 292; *Duncan* v. *Holcomb* (1866), 26 Ind. 378. "The party who invokes the doctrine of former adjudication must be one who tendered to the other an issue to which the latter could have demurred or pleaded." *Jones* v. *Vert* (1889), 121 Ind. 140, 16 Am. St. 379.

In an action against A and B on a note, A made default, and B answered suretyship, which was decided against him. This judgment did not operate as *res adjudicata* in a subsequent action brought by B against A alleging the same facts. *Harvey* v. *Osborn* (1877), 55 Ind. 535. Stated more generally, where two or more defendants make issues with the plaintiff, a judgment determining those issues in favor of the defendants settles between them no fact that might have been, but was not, put in issue by a proper pleading. *Finley* v. *Cathcart, supra.*

"An answer of a former recovery must make it appear that there is an identity between the present and the previous cause of action, and that the parties in the present action are the same as in the previous one." *State, ex rel.,* v. *Page* (1878), 63 Ind. 209, 212. See, also, *Jones* v. *Vert, supra.*

In the former case in his petition to sell the undivided two-thirds of the land to pay debts—which petition was filed within three months after the probating of the will—the administrator tendered to the defendants, the widow and heirs an issue to show cause, if any they had, why said land should not be sold to pay the debts of the testator. The petition alleged that the plaintiff had elected to take under the law, and she had, and so she admitted in her answer, she at that time resting innocently

under the alleged fraud perpetrated upon her by her co-defendants. At the time of filing her answer, the plaintiff had the absolute right to rescind her election, the statutory period not having expired, but, if she had chosen to seek its annulment on the ground of the alleged fraud, she would have been required to implead her codefendants. This she did not do. There was no impleading of any kind between her and her codefendants. Her codefendants in the former suit are the defendants in this, except the administrator, who is here a nominal party. The subject-matter of this suit is entirely different from that of the former suit and there are perhaps other reasons why, under the authorities, the answers under consideration are not good.

The second paragraph of the answer of Russell Strickler counts upon a judgment of partition rendered in a suit brought by the plaintiffs Elizabeth Strickler, Minos O. Strickler, and Elmira J. Whitesell against said Russell Strickler for the division of some property in Centerville, belonging to the estate of Amos Strickler, deceased, in the petition for which Elizabeth admitted she was the owner of one-third and the other parties the owners of the balance. There was no interpleading, and the facts set up are insufficient as a former recovery for the same reasons given above.

After Elmira J. Whitesell had purchased at the administrator's sale the undivided two-thirds of the home farm, she and the plaintiff, within the statutory period for election, entered into a contract whereby the plaintiff agreed to, and did convey to Elmira her undivided one-third of the home farm for the expressed consideration that Elmira should furnish her mother a home on the farm and maintain her as long as she lived. Upon the faith of said conveyance Elmira expended $2,000 for repairs and betterment of the farm. The Whitesells jointly and Elmira separately rely upon these facts, and a

vast amount of irrelevant and evidentiary matter provable under the general denial, to estop the plaintiff from now claiming the fund in the hands of the administrator. It should be borne in mind that the plaintiff is not seeking to disturb a judgment, or anyone's title to the property conveyed by the administrator or herself, but only seeks to be restored to her rights in the proceeds of the property remaining in the possession of the administrator after the payment of debts and expenses of administration. No rights of innocent third persons contravene, and no part of the controversy can affect anyone but the parties to the original fraud charged. Refraining from analysis and extended argument, we deem it sufficient to say that equity will not permit a wrongdoer, while retaining the fruits of his wrong, to interpose an act, intentionally and wrongfully induced by him, as an estoppel against the injured party in an action for redress. One seeking equity must be able to show that he himself has clean hands. The demurrers to the answers in estoppel were rightly sustained. We are also of the opinion that the limitation pleaded by the administrator and the other defendants as above noted, in bar of the complaint, is inapplicable and insufficient.

As we have seen, if a widow is content with the provision made for her by the will, it is not important under §2666 Burns 1901, Acts 1885, p. 239, that she make and file with the clerk her formal election. Her silence and inaction will be held evidence of an acceptance of the will, and, if continued for more than one year from the probate, will be held as conclusive evidence of acceptance.

Under the statute it is clear that if she desires to change or rescind her choice, formed in favor of the will, to that of the law, she must do so within the statutory period. *Garn* v. *Garn* (1893), 135 Ind. 687. That is, if the testamentary provision is to be annulled in favor of the statutory provision, it must be done within

one year from the date of probate, but if she seeks to rescind her election to take under the law and again place herself under the will after the expiration of the year, for fraud, as in this case, she may bring her action within the general statutory period. There is no statute of limitations governing this suit other than the six-year statute, and she is only required, as in other cases in equity, to excuse any apparent delay. With this in view she alleges in the complaint that, at the time Elmira J. and Samuel C. Whitesell and the circuit judge induced her to take the statutory portion in lieu of the testamentary provision, they requested and urged upon her not to tell anyone of the meeting, or of what had been said to her by the judge, or other party in his presence, concerning her husband's want of testamentary capacity, or the invalidity of his will, as the judge had no right to advise her in relation to such matters, and, believing that such representations were true and made in good faith, and relying on them, she was induced thereby to tell no one anything that was said to her concerning her husband's mental condition and the invalidity of his will, or of the meeting, or of what occurred therein, until a few weeks— the exact time she cannot state—prior to the commencement of this suit, when, becoming suspicious that said representations concerning her husband and his will might not be true, she took legal advice, and for the first time learned and discovered that said statements were false, and that her husband did have testamentary capacity when he executed his will, and that said will was valid, and that said false statements and advice were but a fraudulent scheme to induce her to reject the provisions made for her by her husband in his will. These facts we think fully excuse the delay, and show that she brought the action within a reasonable time after the discovery of the fraud. The complaint makes it plain that it was undue influence on the one side and undue confidence on the other that

led the plaintiff to surrender the whole for a part of her husband's estate; and the same influence that induced her to make the election was well calculated to lull her into silent resignation, and prevent inquiry and investigation.

There is nothing in the point that a cause of action cannot be concealed before it exists. It is well settled that acts constituting fraudulent concealment may precede, be concurrent with, or subsequent to, the accruing of the cause of action. It is only important that such acts are of a character, and designed to operate after the cause of action shall arise, to prevent its discovery. *Jackson* v. *Jackson* (1898), 149 Ind. 238, 245.

(4) This cause originated in the Wayne Circuit Court. The regular presiding judge of which court is the same person referred to in the complaint as having joined the Whitesells in advising the plaintiff. The venue of the cause was changed from the Wayne Circuit Court to the Henry Circuit Court and from the latter to the Hancock Circuit Court. The proceedings in the Wayne Circuit Court as disclosed by the certified transcript to the Henry Circuit Court were signed by "John M. Smith, special judge." In the Hancock Circuit Court the defendant Russell Strickler, after appearing and demurring to the complaint, excepting to the ruling, and filing his answers to the merits, moved to strike the cause from that docket, and remand the same to the Wayne Circuit Court, because it did not appear that the Wayne Circuit judge was in any way disqualified, or that Smith was appointed special judge. This defendant at that time made no objection to the special judge sitting in the case, or to the regularity of his appointment, and all such objections will now be deemed waived. "A practice that would permit a party litigant to proceed for months before a *de facto* judge, to make issues, and obtain rulings upon legal questions involved in the controversy, and then if not satisfied with some of his rulings, or not disposed

to go into trial, when the cause is ready for trial, to be able, in a moment, to arrest proceedings, and oust the jurisdiction of the judge, cannot be tolerated." *Lillie* v. *Trentman* (1890), 130 Ind. 16, 20. There was no error in overruling the motion to remand.

The court gave the plaintiff judgment for costs against the defendants Elmira J. and Samuel C. Whitesell, to which they reserved an exception. Section 603 Burns 1901, §594 R. S. 1881, provides that when there are several defendants the costs shall be apportioned according to the judgment rendered upon the issue. The only issue tendered by the complaint was the alleged fraud of Elmira J. and Samuel C. Whitesell. No fraud or wrongdoing was charged against any other defendant. The administrator was but a nominal party. He was only the custodian of the fund the others were lawing over. Minos O. Strickler made no defense. Russell Strickler's defense rested wholly upon the Whitesells' defense. The plaintiff was successful. In such a case the judgment of the court apportioning the cost will be presumed correct. *Miller* v. *Dill* (1898), 149 Ind. 326.

It is further held under said section that if one of several defendants makes a separate issue, which shall be declared against him, he is liable for the costs. *Reynolds* v. *Bond* (1882), 83 Ind. 36, 43; *Boyd* v. *Jackson* (1882), 82 Ind. 525, 530. We perceive no reason why we should disturb the judgment. We find no error in the record.

Judgment affirmed.