## SOUTHERN RAILWAY COMPANY ET AL. *v.* BRETZ, RECEIVER.

[No. 22,598.    Filed February 6, 1914.    Rehearing denied April 22, 1914.]

1. APPEAL.—*Assignment of Errors.—Joint or Separate Assignments.* —Where appellants were sued jointly, and their interests in the action were identical, and they joined in their defenses in the court below, their joint assignment of error in the ruling on a demurrer, and on the motion for a new trial, was sufficient to present the questions on appeal, notwithstanding such demurrer and the motion for new trial were each termed "separate and several," and that separate and several exceptions were reserved to the rulings thereon.    p. 505.
2. APPEAL. — *Assignment of Errors. — Determining Sufficiency.* — While the assignment of errors is the complaint on appeal and must be governed by rules of pleading that are definite and certain, such rules are no more technical in appellate procedure than the rules governing pleadings in the trial court.    p. 506.
3. RECEIVERS.—*Allowance of Claims.—Priorities.—Statutes.—Construction.—"Any Person."*—The words "any person" in §7983 Burns 1908, Acts 1885 p. 36, providing that all debts due any person for manual or mechanical labor shall be preferred claims where the property of the debtor shall pass into the hands of an assignee or receiver, do not include assignees of labor claims, since such statute is designed for the protection of those whose earnings are the result of their own labor.    p. 511.
4. SUBROGATION.—*Sureties or Guarantors.—Abandonment of Contract.*—Where a contractor abandoned his contract, the surety on his bond, on assuming and completing the contract, became subrogated to the rights, as against the contractor, of the one for

whom the contract was performed, and entitled to an equitable lien on the unpaid money earned by the contractor, which, though subordinate to unpaid labor claims in the hands of those who performed the work, is superior to the claim of the receiver for such contractor; but such lien will extend no further than is necessary to protect the surety against loss. p. 511.

From Dubois Circuit Court; *John L. Bretz,* Judge.

Action by Louis J. Bretz, as receiver of Louis R. Mac Donald, against the Southern Railway Company and another. From a judgment for plaintiff, the defendants appeal. (Transferred from the Appellate Court under §1394 Burns 1908, Acts 1901 p. 565.) *Reversed.*

*Alex P. Humphrey, Edward P. Humphrey, John D. Welman, Richard M. Milburn* and *Thomas Duncan,* for appellants.

*Leo H. Fisher,* for appellee.

SPENCER, J.—This is an action by appellee, as receiver of Louis R. MacDonald, to recover for a balance alleged to be due said MacDonald for work done on appellants' right of way. Issues were joined and such proceedings had as resulted in a judgment for appellee in the sum of $1,258.97, from which judgment this appeal is prosecuted.

We are required first to determine appellee's earnest contention that the assignment of errors in this case properly presents no question for our consideration. It reads as follows, omitting the caption: "The appellants say there is manifest error in the judgment and proceedings in this cause, in this: 1. The court erred in overruling the separate and several demurrer of appellants to the second paragraph of appellee's reply to the second, third, fourth and fifth paragraphs of the answer of appellants. 2. The court erred in overruling appellants' motion for a new trial."

Appellee's contention that a joint assignment of errors by several appellants presents no question as to a ruling against one of such appellants which constitutes error

against one only, is supported by the following cases and by many others. *Fowler* v. *Newsom* (1910), 174 Ind. 104, 90 N. E. 9; *Whitesell* v. *Strickler* (1907), 167 Ind. 602, 78 N. E. 845, 119 Am. St. 524; *Green* v. *Heaston* (1900), 154 Ind. 127, 56 N. E. 87; *Sparklin* v. *Wardens, etc.* (1889), 119 Ind. 535, 22 N. E.. 8; *Boyd* v. *Pfeifer* (1884), 95 Ind. 599. This general rule is recognized in *Stamets* v. *Mitchenor* (1906), 165 Ind. 672, 75 N. E. 579, but that case well illustrates the fact that such rule is not without exception. We quote from the opinion therein at page 674: "In this case appellants all joined in the motion for a new trial, and all excepted to the ruling thereon, but the record indicates an attempt to sever in reserving such exception. The assignment of error is predicated upon a ruling procured by the joint act of all the appellants, and a decision which affected in like manner all their rights and interests, and to which they all, though severally, excepted. These facts distinguish this case from those cited and relied upon by appellees, and in our opinion make the assignment of error sufficient." See, also, *Ditton* v. *Hart* (1911), 175 Ind. 181, 185, 93 N. E. 961; *Whitesell* v. *Strickler, supra,* 609.

We adhere to the distinction thus pointed out and hold that it is applicable here. Appellants were sued jointly and their interests in this action are identical, one appellant being the lessor of the other. They have elected to act in harmony in making their defense and while it must be admitted that both the demurrer to appellee's reply and the motion for a new trial are termed "separate and several", and that separate and several exceptions were reserved to the rulings thereon, yet in each instance only one pleading was filed and its effect was the same as though it had been termed "joint". It is true that the assignment of 2. errors is the complaint on appeal and must be governed by rules of pleading which are definite and certain but we see no reason why such rules should be more technical in appellate procedure than in that of the trial

courts. *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99; *Kahle* v. *Crown Oil Co.* (1913), 180 Ind. 131, 100 N. E. 681. Under the facts of this case, appellants' demurrer and motion for a new trial may be fairly construed as having the effect of joint pleadings and, as such, come within the rule above quoted from *Stamets* v. *Mitchenor*.

It is alleged in appellee's complaint that on June 15, 1904, appellants entered into a contract with Louis R. MacDonald, a competent railroad contractor, for the making of certain improvements on appellants' roadbed and right of way; that under MacDonald's supervision said work progressed agreeably in all respects to the terms of said contract from the date of the execution thereof until October 24, 1904, when MacDonald abandoned said work and said contract and absconded and left the State of Indiana; that he has ever since remained away from said State and is now a nonresident thereof; that at the time he absconded and abandoned said contract, he left debts and liabilities to his laborers, materialmen and other creditors on said work which aggregated more than $3,000; that from June 15, 1904, to October 24, 1904, he completed improvements on the right of way, track, and roadbed of appellant companies to the value of over $6,000, all of which was due and owing from appellants to said MacDonald on December 8, 1904, when, with notice to appellants, appellee was appointed and qualified as receiver of said MacDonald; that a demand for said sum was duly made by appellee on the day following his appointment but that appellants then and have ever since failed and refused to pay the same or any part thereof to appellee. A copy of the original contract with Mac Donald is made a part of this pleading.

Appellants filed an answer in five paragraphs of which it is necessary to make particular reference herein to the fifth only. That paragraph admits the execution of the contract set out in appellee's complaint but alleges that in

accordance with said contract and to secure the faithful performance thereof on his part, MacDonald tendered to appellants a certain bond in the sum of $6,000, with the National Surety Company of New York as surety thereon; that this bond, a copy of which is set out in the answer, was accepted by appellants; that to indemnify said surety company against any loss which it might sustain by reason of the execution of said bond, the Southern Contracting Company, for a valuable consideration, entered into an agreement of indemnity with said National Surety Company and therein agreed to save it harmless from any loss as aforesaid; that on October 24, 1904, the day MacDonald abandoned his said work and contract it was agreed by and between said MacDonald, the National Surety Company, as surety, the Southern Contracting Company, as indemnitor, and appellants that said Southern Contracting Company should complete said work under said contract; that pursuant to said agreement, which was reduced to writing and a copy thereof set out in the answer, MacDonald assigned his original contract to the Southern Contracting Company and the latter completed the improvements to be made thereunder; that in accordance with said contract and said assignment, appellants paid to the Southern Contracting Company all sums of money earned after October 24, 1904, and for all work done prior thereto by MacDonald, if any was then earned by him and unpaid at the time of making said assignment and the undertaking of said work by said Southern Contracting Company.

Appellee replied in two paragraphs. The first is a general denial while the second, which modifies the demand made in the complaint, alleges that appellee was duly appointed and qualified as receiver for said MacDonald on December 8, 1904, in a certain action then pending in the Dubois Circuit Court wherein Joseph and Andrew Greener were plaintiffs and said MacDonald and six others, including appellants, were defendants; "that during the progress

of said work by MacDonald upon said contract and within four months prior to October 24, 1904, said original plaintiffs Andrew and Joseph Greener, doing business under the firm name of Greener Brothers, purchased and paid for certain labor claims had and held by more than thirty laborers against the said contractor Louis R. MacDonald for work and labor done and performed on said contract during the months of July, August and September, 1904; that each of said claims so purchased from said laborers amounted to more than $50 and they were evidenced by written time checks executed by the said MacDonald to the said laborers showing the dates and days worked and the amount earned by said work; that said labor claims so purchased were duly assigned by each of said laborers endorsing his name on the back of said time checks and transferring and delivering the same to the said Greener Brothers; that the said Greener Brothers paid said laborers for said claims and time checks when so delivered to them during the months of July, August, September and October, ninety-five cents on the dollar; that thereafter, to-wit, on the 20th day of January, 1906, in a certain action then pending by the said Greener Brothers against the said Louis R. MacDonald upon said purchased and assigned labor claims and time slips, the said Greener Brothers recovered a judgment against the said Louis R. MacDonald in the sum of $967.75 as assignees of said labor claims and also in the same action recovered in said court on said labor claims the further judgment in addition thereto, against the said Louis R. MacDonald, in the sum of $1,367.83 on said assigned labor claims, and that this receiver thereafter informed said Greener Brothers that he would allow the amounts as claims for labor against the said Louis R. MacDonald and that he did allow them; that said labor claims of the said Greener Brothers, upon which they obtained the judgments aforesaid and which were allowed by this receiver as aforesaid, have been ever since due and owing to the said Greener Brothers from the said

Louis R. MacDonald and the same remain wholly unpaid.''
The reply then admits MacDonald's assignment of his orig-
inal contract on October 24, 1904, but charges that appel-
lants ''well knew and understood that the said Louis R.
MacDonald was owing and indebted for the labor claims
herein before set out, and that the same were not paid and
no provisions were made for the payment thereof''; that
before the appointment of appellee as receiver on Decem-
ber 8, 1904, service was regularly had on appellants and
the other defendants in the action by Greener Brothers for
the appointment of a receiver and they were duly notified
of the pendency of said action; that on said date appellants
owed MacDonald a balance for work and labor done and
performed on said contract in the sum of $893.10, for which
balance demand has been made by appellee but the same is
unpaid. On the issues thus joined, the cause was tried by
the court which found for appellee and rendered judgment
accordingly.

In support of this appeal, appellants take the position
that by the abandonment of his contract, MacDonald lost
the right to compel appellants to pay him any further sums
of money for work done under said contract; that appel-
lants then had the right to treat the earned money remain-
ing in their hands as a fund for the completion of the
work; that under the equitable doctrine of subrogation,
MacDonald's surety was entitled to have the fund so applied;
that the parties interested in such fund, namely, MacDonald,
appellants, the surety company and the indemnitor could
lawfully enter into the contract of assignment of October
24, 1904, and that appellee had no right to the fund assigned
by said contract. To defeat this position and to sustain
the judgment of the trial court, appellee relies on §7983
Burns 1908, Acts 1885 p. 36, which reads as follows: ''All
debts due any person for manual or mechanical labor shall
be a preferred claim in all cases against any individual,
copartnership, corporation or joint stock company where

the property thereof shall pass into the hands of an assignee or receiver, and such assignee or receiver in the distribution and payment of the debts shall be required to first pay in full all debts due for manual or mechanical labor before paying any other, except the legitimate costs and expenses.''

If the words ''any person'' are to be construed as including the assignees of labor claims appellee's position is well taken but we cannot agree that such is the proper construction. Statutes such as the above are designed for the protection of those whose earnings are the result of their own labor. Their aim is to secure to the laboring man the product of his toil and to that end they are to be liberally construed. *Pendergast* v. *Yandes* (1890), 124 Ind. 159, 24 N. E. 724, 8 L. R. A. 849; *Bass* v. *Doerman* (1887), 112 Ind. 390, 14 N. E. 377. But the rule must fail with the reason thereof and where it appears, as in this case, that the labor claims have been bought up by wage-brokers as a speculation, and transferred to them, we see no reason to hold that the assignees of such claims are entitled to preference over other creditors. The protection given by statutes such as the one under consideration does not inure to the benefit of third persons but only to the wage-earner himself and to his estate. *Fleming* v. *Greener* (1909), 173 Ind. 260, 87 N. E. 719, 90 N. E. 72, 140 Am. St. 254, 21 Ann. Cas. 959; *Jenckes* v. *Jenckes* (1896), 145 Ind. 624, 634, 44 N. E. 632; *Richeson* v. *National Bank, etc.* (1910), 96 Ark. 556, 132 S. W. 912; *Goodman, etc., Co.* v. *Pence* (1887), 21 Neb. 459, 32 N. W. 219; *Tewksbury* v. *Bronson* (1880), 48 Wis. 581, 4 N. W. 749.

The remaining question which we have to consider is determined by those authorities which hold that where the surety, or indemnitor, on the bond of a contractor who abandons his contract, assumes and completes the work, he is subrogated to all rights which the owner of the property might have enforced against the contractor if such owner had elected to declare the contract

forfeited and complete the work himself.    *Prairie State Bank* v. *United States* (1896), 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412; *First Nat. Bank* v. *City Trust, etc., Co.* (1902), 114 Fed. 529, 52 C. C. A. 313; *School Town of Winamac* v. *Hess* (1898), 151 Ind. 229, 241, 50 N. E. 81. Under such circumstances, as against the contractor, the owner is entitled to retain the money earned and unpaid when the contract was abandoned as a fund to insure the proper completion of the work.    Applying this principle, it follows that when the surety assumes the contract, he acquires an equitable lien on such fund which, though subordinate to unpaid labor claims in the hands of those who performed the work, is superior to the claim of the receiver. The general rule stated in *McDaniel* v. *Osborn* (1906), 166 Ind. 1, 6, 75 N. E. 647, 2 L. R. A. (N. S.) 615, 117 Am St. 354, that "an assignee or receiver cannot acquire or exercise any greater title or rights in and to the property committed to his control than the insolvent or embarrassed debtor had and could enforce", is applicable here.

It is true that the lien of the surety on the funds in the hands of the owner will extend no further than is necessary to protect such surety against loss but in the pleading before us there is no averment that the balance paid over by appellants to the Southern Contracting Company was more than sufficient to repay the surety for its outlay in completing the work and no facts are pleaded from which such inference may be drawn.    The demurrer to the second paragraph of reply should have been sustained.    Judgment reversed.

NOTE.—Reported in 104 N. E. 19.    As to subrogation in the case of a surety, see 134 Am. St. 566.    See, also, under (1) 2 Cyc. 1003; (2) 2 Cyc. 980; (3) 34 Cyc. 362, 363; (4) 37 Cyc. 402, 426.