[No. 1636. Decided June 26, 1895.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM HOLMES, *Appellant*.

JUDGE OF SUPERIOR COURT — AUTHORITY TO HOLD COURT IN OTHER COUNTY — PRESUMPTION — WAIVER OF WANT OF JURISDICTION — HOMICIDE — JURY FROM BYSTANDERS — EXAMINATION IN ABSENCE OF ACCUSED — MISCONDUCT OF JURY — NAMES OF WITNESSES ON INFORMATION — CHARGE — SUFFICIENCY OF EVIDENCE.

The provision of the constitution (art. 4, §7), empowering the judge of any superior court to hold court in any county at the request of the judge of the superior court of such county is self-executing.

There being no constitutional or statutory provision in this state requiring the fact to be spread of record, when any visiting judge has been called to hold court in another county, the presumption must obtain, in the absence of an affirmative showing to the contrary, that such visiting judge properly acquired jurisdiction to discharge the duties of judge of the court to which he has been called.

Where objection to the jurisdiction of a court on account of the ineligibility of the judge is not urged until after a submission of the cause to the jurisdiction, the objection is waived, as well in criminal as in civil proceedings.

Under Code Proc., § 339, when the jury list has become exhausted before the completion of a jury, jurors may be summoned from the bystanders, even if some of those drawn may have failed to appear, as the presumption is that they had been properly excused by the court.

The fact that a portion of a jury were induced to unite upon a verdict of murder in the first degree, upon the representation of another juror that the judge might sentence the prisoner thereunder to imprisonment for life instead of imposing the death sentence, does not constitute misconduct of the jury, as the jury have nothing to do with the penalty to be imposed.

The objection that the defendant in a criminal case had been absent during the examination of a portion of the jury cannot be raised in the supreme court by affidavits, when there is nothing in the record as certified and settled showing such fact.

The endorsement of additional witnesses upon an information shortly before trial is a matter within the discretion of the court, and does not constitute error unless there is an abuse of such discretion.

Upon the question as to whether the defendant had time to cool his passions between the quarrel and the killing a charge to the jury that "they must take into consideration the mental power, habits, circumstances and situation in which the defendant was at the time, and the jury must believe beyond a reasonable doubt that the defendant under the circumstances did cool his passions before they can find him guilty of murder in the first degree," is erroneous.

The exclusion of impeaching testimony is not prejudicial error when the facts to which the witness has testified are testified to by a number of other witnesses.

A verdict of murder in the first degree will not be disturbed on appeal, although it is a close question under the facts in evidence, when the case has been submitted to the jury under proper instruc-

tions, and there is evidence upon which their verdict could be properly based, although it may not be entirely convincing to the appellate court.

*Appeal from Superior Court, King County.*

*Melvin G. Winstock,* and *Frank B. Ingersoll,* for appellant.

*A. W. Hastie, Prosecuting Attorney,* for the State.

The opinion of the court was delivered by

DUNBAR, J.—This was an information against the defendant, charging him with murder in the first degree. Upon the trial a verdict was rendered in accordance with the charge. Judgment was entered upon the verdict, from which judgment an appeal is taken, seeking a reversal upon several errors assigned.

The first error assigned is a want of jurisdiction in the trial judge. It is conceded that Judge J. Z. MOORE, who tried this case, is not one of the superior judges elected for the county of King, where the cause was tried and which was the home of the defendant. There is nothing in the record in this cause to show in what manner Judge MOORE was authorized to hold court in King county at the time of the trial of this case, except a *nunc pro tunc* order made by Judge HUMES, on the 26th of March, 1894, to the effect that an order be entered on the records of March 3, 1894, (a date prior to the trial of the cause), setting out that "the Hon. JAMES Z. MOORE, judge of the superior court of the State of Washington, for Spokane county, is requested to sit as judge of this court and to hold a session thereof, commencing March 12, 1894, and to transact such business as may come before him as such judge in the criminal department thereof." There appear in the record affidavits of RICHARD

OSBORN and J. W. LANGLEY, who are the two other superior judges of King county, to the effect that they did not at any time join in a request to Judge MOORE to hold said term of court. Upon this state of affairs, it is contended by the appellant that the acts of Judge MOORE in the premises were without jurisdiction and therefore void.

Section 7 of Art. 4 of the Constitution provides, that " the judge of any superior court may hold a superior court in any county at the request of the judge of the superior court thereof, and upon the request of the governor it shall be his duty to do so." It is the contention of the appellant that this provision of the constitution is not self-executing, but that all the authority which can be conferred upon a judge who resides out of the county where the cause is tried is conferred by §§ 1 and 2 of Chapter 43, of the Laws of 1893 (p. 67). Those sections provide in substance that whenever a judge of the superior court of any county, or a majority of such judges in any county in which there is more than one judge of said court, shall request the governor of the state to direct a judge of the superior court of any other county to hold a session of the superior court in the county mentioned, after the governor shall have so requested him, it shall be the duty of the judge to hold such session; or that whenever a like request shall be addressed by the judge or by a majority of the judges (if there be more than one) of the superior court of any county to the superior judge of any other county, the judge addressed is empowered, if he deem it consistent with the state of judicial business in his own county, to comply with such request, to hold the session, etc. We are of the opinion that the provision of the constitution empowering the judge of any superior court to hold court at

the request of the superior judge of any county is self-executing. This provision not being a limitation, but being in the nature of a legislative enactment, it follows that if the enactment could be sustained and made self-executing if it had been a statutory enactment, it is self-executing as a constitutional enactment.

There can be no question of the validity of the action of the courts under such statutory enactments, where no penalty is provided in case of a failure of the court to comply with the requirements of the law. In fact, it is not common for laws of this kind, conferring jurisdiction upon courts, to provide penalties for the non-performance of the duties imposed. The presumption is that the judge will assume the jurisdiction which the law gives him, and if he wilfully violates his duties under the law, the remedy is by impeachment. Indeed, the statute upon which the appellant relies, and the provisions of which he contends must have been complied with to give the court jurisdiction, and which he admits would have given the invited judge jurisdiction, is a common example of this character of legislation concerning courts; for while, as in the constitutional enactment, it is made the *duty* of the judge to whom the request is addressed by the majority of the judges in the county to hold said court, and it is also made his *duty* to hold said court when directed so to do by the governor, it nowhere imposes any penalty for his refusal so to do, and provides no means of compelling him to hold said court. The logic of the appellant, then, would abrogate both constitutional and statutory enactments.

It follows that the superior courts being courts of general jurisdiction, it will be presumed that the court in each instance acted within its jurisdiction, in the absence of an affirmative showing to the contrary.

The acts of the judge were of an official nature, and the rule of construction is found in the maxim, "*omnia praesumuntur rite et solemniter esse acta donec probetur in contrarium.*" It will be presumed, said Judge STORY in *Bank of the United States v. Dandridge*, 12 Wheat. 64, that a man acting in a public office has been rightly appointed; that entries found upon public books have been made by the proper officer; even that. the same presumptions apply to corporations, and that persons acting publicly as officers of the corporations are to be presumed rightfully in office, and that the acts done by the corporations, which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter. How much more strongly, then, will the maxim apply to the acts of a court of general jurisdiction where the act done by the court presupposes the existence of other acts to make them legal, presuming, for the sake of the argument, that the provisions of the statute are mandatory. It will be observed that neither the constitution nor the statutes in this state make provision for the spreading upon the record of the fact that the visiting judge has been called to hold court either by the governor or by the judges in the county where the term of court is held. Most of the cases cited by the appellant are cases where the statute requires a record to be made of the request or acceptance.

The first case cited, viz., *Gresham v. Ewell*, 85 Va. 1. (6 S. E. 700), held, it is true, that the action of the invited judge was void in a case where the record did not show that an order had been entered of record calling the judge according to the provisions of the statute. But in that state the statute provided that it must be entered of record, and the case was decided especially upon the provision of the statute requiring the

entry upon the record.  The court, among other things, in the decision of the case said:

" It is only when such entry is made that the law gives the authority; the jurisdiction and authority from any other source is merely self-assumed.  The legislature doubtless had reasons satisfactory to that body when this provision was inserted in the law; for the provision, ' and it be so entered of record,' is an amendment to the former law."

So that it seems that if the provision, " and it be so entered of record," had not appeared in the statute of that state, the decision in the case would have been in favor of the jurisdiction of the acting judge.

*Nelms v. Vaughan*, 84 Va. 696 (5 S. E. 704), seems to us to be opposed to the contention of appellant. There it was decided that, under an act which provides that the returns of county elections shall be subject to the inquiry of the county court, upon the complaint of qualified voters, to which two shall take and subscribe an oath, the omission to subscribe as required does not deprive the court of jurisdiction, such provision not being essential to the validity of the proceedings unless so declared by statute.  And the whole tenor of the decision is to the effect that a statute like ours is directory and not mandatory. The court, in that case, says:

" We are authorized to regard the directions as to form as merely directory, as there is no intimation that they must be done or all will be vitiated, or else no proceedings shall be further had."

And it quotes Justice TAUNTON in *Pearse v. Morrice*, 2 Adol. & E. 94, where he says:

" I understand the distinction between directory and imperative statutes to be that a clause is directory when the provisions contain mere matter of deduction, and nothing more; but not so when they are followed

by such words as are used here, viz., that anything done contrary to such provisions shall be null and void to all intents. These words give a direct, positive and absolute prohibition."

Continuing, the court says:

" A statute directing the mode of proceeding by public officers is to be deemed directory, and a precise compliance is not to be deemed essential to the validity of the proceedings, unless so declared by statute;" citing *People v. Cook*, 8 N. Y. 87 (59 Am. Dec. 451).

Many other cases are cited in this opinion sustaining the view that such statutes as ours are purely directory. The citation of this case by the appellant must have been a mistake.

*The American Loan & Trust Co. v. East & West R. R. Co.*, 40 Fed. 182, decides, upon a direct application challenging the jurisdiction of the judge who tried the cause, by petition in advance of the trial, that the judge had no jurisdiction; but the opinion is exceedingly meager, no reason for the decision is given and the statute is not quoted. It would seem, however, from what little is said in the case, that the statute provided that the outside judge had no authority to act except when there was a vacancy. So that this case is of little or no assistance in the investigation of the case at hand.

*Greenwood v. State*, 116 Ind. 485 (19 N. E. 333), decided that an appointment without writing, as required by law, of an attorney to try a case on the incompetency of the judge, confers no authority when seasonably objected to. In this case it appeared that objection was duly made to the judge of the court, and that he called a member of the bar to preside as judge, but made no written appointment as the law required. The appellant at once objected to the competency of

the attorney called by the judge. "And thus," said the court in rendering the opinion in that case, "presented the question at the earliest opportunity. As there was no written appointment, and as the objection was promptly interposed, the appeal must be sustained." So it will appear that the appeal was sustained in that case because the objection was made before the judge assumed jurisdiction. In fact, the court continuing says:

"In sustaining this appeal we do not mean to hold that an oral appointment is absolutely void; on the contrary, we do hold, as we did in *Schlungger v. State, supra,* that it is not absolutely void, and that an objection to the method of appointment may be waived, and will be deemed waived unless seasonably made. The person appointed is at least judge *de facto,* and, in order to make availing an objection to the competency of a judge *de facto,* it must be promptly interposed, for the acts of such a judge may be valid, and so they will be regarded where there has been a waiver of objections;" citing *Smurr v. State,* 105 Ind. 125.

The court adds:

"The term 'void' is improperly used in some of the cases, for the acts of a *de facto* judge are at most only voidable. We cannot approve of some of the expressions found in the cases upon this question; for we are convinced that, upon principle and authority, the acts of a *de facto* judge will stand unless promptly and properly assailed."

Thus it will be seen that this case is squarely and forcibly against the contention of the appellant that the action of the judge was void, as no objection was raised in the case at bar to the jurisdiction before the trial of the cause.

*Smith v. State,* 24 Tex. App. 290 (6 S. W. 40), like *Gresham v. Ewell, supra,* is decided squarely upon the

ground that the statute provides that the selection of
the judge by the parties, or appointment by the gov-
ernor, and the fact that the oath of office was admin-
istered to the invited judge, shall be entered upon the
minutes of the court as a part of the record in the
cause; and is, consequently, not applicable to a case
under our statute.

As no cases sustaining the contention of appellant
have been cited, it will be presumed that none can be
found.    There is an abundance of authority, however,
to the effect that the acts of a *de facto* judicial officer
will be presumed to have been done with jurisdiction,
unless it affirmatively appears to the contrary, and that,
in any event, objection to the jurisdiction of the court
must be seasonably urged.

In *Smurr v. State*, 105 Ind. 125 (4 N. E. 445), it was
held that, if a defendant voluntarily appears and goes
to trial without objection, at an adjourned term irregu-
larly held, he will be deemed to have waived all ob-
jections to the irregularity.

In *Venable v. White*, 2 Head, 582 it was even held
that, where no objection is made and there is color of
authority for holding the term, although the statute
under which the judge assumed to act had been re-
pealed, still the proceedings were not void.    It was
there said:

" There can be no doubt whatever, upon reason and
authority, that a judgment given by a judge *de facto*,
sitting and holding a court at the proper time and
place, is as valid and free of error as a judgment pro-
nounced by a judge rightfully in office."

The case is cited in *Smurr v. State, supra,* in which
case the authorities generally are collated and dis-
cussed.

"Where the regular judge of the court to which a

cause has been remanded, being of counsel for one of the parties, is disqualified to preside, and a special judge is called, without objection being made at the time to his appointment or to his sitting at the time he assumes jurisdiction, all objections to the regularity of the appointment will be deemed waived." *Lillie v. Trentman*, 130 Ind. 16 (29 N. E. 405).

In *State v. Lewis*, 107 N. C. 967 (12 S. E. 457), it was held that, under a statute which provided that the governor had power to appoint any judge to hold special terms of a superior court in any county, where the elected judge had died or resigned, a judge of one district, who assumes the functions of a judge of another court by virtue of a commission of the governor to hold specified terms of court in lieu of the regular judge thereof who had died, is a judge *de facto*, and so long as he exercises those functions, even though the commission was invalid, that his acts as such are conclusive as against the defendant put on trial before him who pleads not guilty and is tried without raising any objections; and that a motion in arrest of judgment after verdict, on the ground that the case is *coram non judice*, should be overruled. To the same effect are *Craig v. Somers*, 55 N. J. Law, 525 (27 Atl. 639), and *Cox v. Peoria Mfg. Co.*, 60 N. W. (Neb.) 933.

In *Texas Central Ry. Co. v. Rowland*, 3 Tex. Civ. App. 158 (22 S. W. 134), it was held that the trial of a cause before a special judge without objection is in itself an agreement to submit the case to him, and no objection as to qualification can thereafter be made.

In *Empire Land & Canal Co. v. Engley*, 14 Colo. 289 (23 Pac. 452), it was held that, where a district judge holds a term of court outside of his own district, his authority so to do and to try the causes pending in said court will be presumed unless the contrary appears.

It was held by this court in *State, ex rel. Schloss, v. Superior Court*, 3 Wash. 696 (29 Pac. 202), that, where the attorneys of the parties to an action agree upon a member of the bar as a judge *pro tem.* for the trial of a cause, and such agreement is approved by the judge of the court, and the approval entered upon the journal, and the judge *pro tem.* properly sworn to try the case, the presumption arising from the journal entries is that a written stipulation as required by law was entered into for the appointment of such judge *pro tem.*

The rule compelling the defendant to raise timely objection to the jurisdiction of the court is based upon principles of right and fair dealing. The statute is liberal in protecting the real rights of a defendant in criminal actions, and ample opportunity is given him to present objections to anything which is prejudicial to his rights. Knowing the ineligibility of the judge who tries his case, and yet submitting himself to the jurisdiction, being ready to avail himself of the action of the court if the verdict should be in his favor, he should not in justice be permitted to object to such jurisdiction when it eventuates that the verdict is against him. Such a practice would tend to defeat justice rather than to secure to the defendant his substantial rights.

The next assignment of error is that the law was not observed in impaneling the jury. The statute, in § 339 of the Code of Procedure, provides that if the ballots become exhausted before the jury is complete, or if from any cause a juror or jurors be excused or discharged, the sheriff, under the direction of the court, shall summon from the bystanders as many qualified persons as may be necessary to complete the jury. This was what was done in this case, and if any of the jurors failed to appear when drawn by the clerk, the

presumption is that they had been properly excused by the court under the provisions of the law.

It seems that while the jury was deliberating, three of the members resisted a verdict of murder in the first degree until one juror, who claimed to know the law, informed the doubtful jurors that it was in the power of the trial judge to sentence the defendant upon conviction of murder in the first degree to life imprisonment instead of to death, and that by reason of this information the doubtful jurors consented to a verdict of murder in the first degree. This alleged misconduct was brought to the attention of the court through the affidavit of one of the jurors, and also by the affidavit of persons who heard the statements that passed between the jurors. It is a very grave question whether or not jurors would be allowed to impeach their own conduct, but it is not necessasy for us to decide that question in this case, for with the question of penalty the jury has nothing to do. Their province is to decide, under the testimony and under the law as given by the court, of what crime, if any, the defendant is guilty. If they thought, under the testimony adduced and the law delivered by the court, that the defendant was guilty of murder in the first degree, it was their duty to render a verdict of murder in the first degree, regardless of the powers of the court to change the degree of punishment; and it is evident, even from the affidavits, that they did think so, but that they simply would not have agreed to the verdict of murder in the first degree except upon the understanding that it was within the power of the court to sentence the defendant, upon conviction of murder in the first degree, to life imprisonment instead of to death. As we have before said, they were not properly interested in the pen-

alty which could be imposed by the court. That was a question which the law decided without their aid.

We think there was no substantial harm, or any harm, done to the defendant by the alleged misconduct of the bailiff in this case.

An energetic argument is made by the attorney for the appellant in this case to the effect that the court erred in compelling the defendant to proceed to trial with a jury which had been partially examined during the absence of the defendant. This would indeed be a serious question if it were properly before this court. The affidavit of Attorney Winstock is to that effect, but this is an affidavit that is made outside of the statement of facts and after the settlement of the statement of facts and some seven months after the trial of this cause; and this sort of extraneous testimony cannot be admitted to contradict the record, and there is nothing in the record to show that the prisoner was absent during the examination of the jury.

It is again urged that the court erred in allowing the names of certain witnesses to be endorsed upon the information shortly before the trial. We think this was a matter in the discretion of the court and that under the circumstances as shown by the record the discretion was not abused.

Several errors are predicated upon the instructions given by the court, and upon the refusal of the court to give certain instructions asked by the defendant. To those instructions asked by the defendant in regard to intoxication, or conditions of mind brought about by intoxication, being a defense to crime, we think it is hardly worth while to revert. The law, for reasons which are so manifest and which have been so often expressed that a repetition of them here would be use-

less, is well settled that intoxication is not a defense to a charge of crime. The court properly instructed the jury on this subject; and the instructions which were asked for by the defendant were either not pertinent under the testimony, or were not the law.

One instruction in regard to the cooling time, which was asked by the defendant and refused by the court, was as follows:

" The jury are instructed that, considering the question as to whether or not the defendant had time to cool his passions between the quarrel and the killing, they must take into consideration the mental power, habits, circumstances and situation in which the defendant was at the time, and the jury must believe beyond a reasonable doubt that the defendant under the circumstances did cool his passions before they can find him guilty of murder in the first degree."

It is strongly insisted by the appellant that the court erred in refusing this instruction. We cannot agree with this contention. It is not the question of whether or not the defendant *did* cool his passions that the jury is to consider and which is the logic of this instruction, but the question is whether under the circumstances he *had time* to cool his passions, for, if a reasonable time for cooling the passions has occurred, the defendant cannot rely upon the fact that his passions as a matter of fact did not cool.

We do not think there was any prejudicial error incurred by the defendant from the fact that the testimony tending to impeach Chapman was excluded. In the first place, we do not think that the testimony was properly offered; and, in the second place, the jury would, in all human probability, have come to the same conclusion without the testimony of Chapman, as the main facts in the case were testified to by so many other witnesses.

We think the court properly overruled the motion for a new trial on the ground of newly discovered evidence, as such evidence was purely cumulative, and was not of a character to be distinguished from the ordinary cumulative evidence.

It is earnestly contended by the appellant that the testimony in this case conclusively shows that the defendant should not have been convicted of murder in the first degree, and this is a question which has given the court more trouble than all the technical questions which have been raised in the case. The facts conclusively proven are that the defendant was a colored boy of weak physical structure and possibly of no very great strength of mind, who was engaged as a miner in the coal mines of the Oregon Improvement Company at Franklin, King county, Washington; and William Russell, a large, powerful man of some two hundred pounds weight, roomed with this boy; that the day upon which the killing occurred was pay day in the mines; that these two men, in company with most of the other miners, had congregated at the company's saloon, as was the custom of the miners, to spend their wages and dethrone their reason by drinking whisky. Russell, as is shown by the testimony, was, in common parlance, a bully, and an overbearing, brutal man. On that day he had left his pistol on the table in their room and Holmes had taken it with him to the saloon, and had given it to another boy named Evan John, and told him to take it home. Russell accused the defendant of stealing his pistol, which the defendant denied, telling him that he could search him. Search was made and the pistol was not discovered on the person of defendant. Russell then, in a most brutal and cowardly manner, assaulted the boy, slapping him with his heavy hands first on one

side of the face and then on the other. The testimony shows that he rather gloried in being a ruffian; said that he did not care for death, and that he calculated to have a nigger before the day was over. As soon as he was released from the hands of Russell, the defendant immediately started to overtake the boy who had the pistol. He overtook him, and asked for and obtained the pistol, then returned to the saloon and, without any warning, deliberately fired at Russell, who evidently did not see him as he approached. The first shot failed to take effect; whereupon Russell, turning, jumped toward the defendant, who fired again, striking him in the forehead. Russell then fell and immediately expired.

The time elapsing between the assault upon the defendant and his return is variously estimated by the witnesses at from ten to twenty minutes. Much excitement naturally prevailed, so that it is difficult to fix the time with any definiteness; but from the distance the defendant went to get the revolver we conclude it was something like ten or fifteen minutes.

This is a hard case and the condition of the defendant is touching; and whether or not, if this court had sat as jurors in the case, under the testimony they would have felt justified in returning a verdict of murder in the first degree is questionable. But that matter having been submitted to the jury upon what we deem proper instructions, and it being a close question under the facts as shown by the record, we do not feel justified in disturbing the verdict rendered.

There is, therefore, nothing left for this court to do but to affirm the judgment, and it is so ordered.

HOYT, C. J., and ANDERS, SCOTT and GORDON, JJ., concur.

## ON PETITION FOR RE-HEARING.

DUNBAR, J.—The attorneys for the defendant in
this case have filed with this court a very earnest and
feeling petition, asking for a rehearing of the case.
So far as the questions of jurisdiction, non-waiver, and
misconduct of the jury are concerned, they were ex-
amined with great care upon the original hearing, and
no argument is presented in this petition which con-
vinces us that the conclusion we reached upon the
argument of the case and announced in the opinion
rendered should in anywise be modified.  It is in-
sisted that, from the fact that the court in its opinion
expressed some doubt as to the correctness of the ver-
dict under the testimony, it is the duty of the court to
grant the re-hearing asked for, or at least set aside the
verdict for murder in the first degree and impose that
of murder in the second degree, and the case of *State
v. Freidrich*, 4 Wash. 204 (29 Pac. 1055), is relied upon
by the petitioners to sustain this contention.

We have re-examined the case of *State v. Freidrich,
supra*, but we think that it is not in point in this case.
There this court found that there was no evidence
whatever to sustain a verdict for murder in the first
degree, because there was no evidence of premedita-
tion, no testimony which, if undisputed, would have
warranted the jury in coming to the conclusion that
the defendant Freidrich was guilty of murder in the
first degree.  But in the case at bar there was testi-
mony tending to prove premeditation on the part of the
defendant, and while that testimony might not have
been sufficient to have satisfied the minds of this court,
yet it has been our uniform holding that where a
question of fact was legally presented to a jury, and
there was sufficient testimony from which the jury

could draw an inference of guilt, this court would not substitute its judgment for the judgment of the jury and reverse their decree.   It was said by this court in the case of *Burden v. Cropp*, 7 Wash. 198 (34 Pac. 834):

"It is not enough to authorize us to disturb the verdict of a jury, that we should be of the opinion that the evidence upon the other side was entitled to a greater weight than that upon which the verdict seems to have been founded. It is enough if there was any evidence which, if uncontradicted, would be sufficient to establish all the facts necessary to sustain the complaint of the successful party."

It is true, that was a civil action, but the rule is the same in criminal cases, while, of course, the degree of conviction in the mind of the juror must be greater; in one case it rests upon a preponderance of the testimony, and in the other upon a belief beyond a reasonable doubt.   But in a criminal case, if the court can determine that the jury had sufficient testimony before them to convince their minds beyond a reasonable doubt of the guilt of the defendant, the fact that such testimony would not be so convincing to the minds of the members of this court would not justify the usurpation of the functions of the jury by this court.   As we view the testimony, the circumstances tending to prove and disprove premeditation are conflicting, and, notwithstanding the fact that the conclusion reached by the jury might not coincide with our judgment, under the law announced by this court, and by all courts in cases of trial by jury, we are compelled to accept the decision of the jury as conclusive.

The petition for re-hearing will therefore be denied.

HOYT, C. J., and ANDERS, GORDON and SCOTT, JJ., concur.