STATE v. WILLIAMS.

(Filed April 17, 1906).

*Homicide —Self-Defense —Evidence —Question for Jury.*

> Where the prisoner asked the deceased, who was drinking and noisy, to leave his sister's house, as she was sick, and deceased threatened to shoot any one who put his foot out of the door, and when the prisoner, unarmed, went out at the front door, deceased shot at him, and the prisoner testified that he went back and stayed about fifteen minutes and then went out at the back door with a rifle, to see if deceased had gone, and that he was shot at by the deceased and shot back, because he was afraid deceased would shoot again before he got to the house, the court erred in refusing to submit a prayer presenting defendant's theory of self-defense.

INDICTMENT for murder against Robert Williams, heard by *Judge R. B. Peebles* and a jury, at the Fall Term, 1905, of the Superior Court of DAVIE. From a verdict of manslaughter and judgment thereon, the prisoner appealed.

*Robert D. Gilmer, Attorney-General,* for the State.

*T. B. Bailey, E. L. Gaither* and *A. T. Grant* for the defendant.

CLARK, C. J. The deceased and one Tucker went to the house of prisoner's sister and were drinking and noisy. The prisoner came while they were there and asked them to go away, as his sister was sick. The deceased threatened to shoot any one that put his foot out of the door. The pris-

oner testified: "I went out at the front door, and as I got about two feet from the door deceased shot at me with his gun; I think he was about fifty yards off; heard shot strike some lumber behind me; I had no gun at this time. Went back and stayed about fifteen minutes, and then went out at the back door with a rifle. I went out to see if they were gone. I went about twenty steps until I had passed Fisher Phelps' house. As I passed deceased saw me; he was squatted down, and he shot at me. As he shot I shot towards him. I shot because I was afraid he would shoot me again before I got in the house; he was about sixty-five or seventy yards away. I did not know whether I had hit him or not." In fact, the deceased was killed.

The court refused to submit a prayer presenting the defendant's theory of self-defense and charged in lieu thereof, "That if the jury were satisfied beyond a reasonable doubt that the prisoner fired the fatal shot, then the only thing for them to consider was whether the prisoner was guilty of murder in the second degree or manslaughter. In any view of the testimony he would be guilty of either one or the other, and it was for the jury to determine which." This was error.

The prisoner's testimony was that he went out of the house, by the other door, after the lapse of fifteen minutes, "to see if they were gone;" that he was shot at, and that he shot back "because I was afraid he would shoot me again before I got in the house." The lapse of fifteen minutes was sufficient cooling time, as His Honor held, and if the prisoner went out for the purpose of renewing the fight, as His Honor seems to have assumed, the charge was even more favorable to the prisoner than he was entitled to. But though his carrying the gun looks suspicious, it was not conclusive of his motive, as he may have carried it for precaution and in self-defense. His testimony presented the phase of self-defense, if believed, and he was entitled to have the jury pass upon it.

Error.