## *In re* M. F. FRALEY.

No. A-757.   Opinion Filed May 21, 1910.

(109 Pac. 295.)

1. **HOMICIDE—Reduction of Homicide to Manslaughter — Cooling Time.** In determining whether a homicide is reduced from murder to manslaughter, the question is not only did the defendant's passion engendered by a sufficient provocation in fact cool, but also was the time intervening between the giving of the provocation and the killing sufficient for the passion of a reasonable man to cool? An affirmative answer to either question precludes a reduction of the homicide to manslaughter.

2. **SAME—Question of Law and Fact.** If a fatal wound be inflicted immediately following a sufficient provocation given, then the question as to whether the defendant's passion thereby aroused had in fact cooled, or as to whether a sufficient time had elapsed in which the passion of a reasonable man would have cooled, is a question of fact to be determined upon a consideration of all the facts and circumstances in evidence; but when an unreasonable period of time has elapsed between the provocation and the killing, the court is authorized to say as a matter of law that the cooling time was sufficient.

3. **HOMICIDE — "Murder."** A deliberate killing committed in revenge for an injury inflicted in the past, either near or remote, is murder.

4. **HABEAS CORPUS—Right to Bail—Burden of Proof.** Upon an application for bail by writ of habeas corpus after commitment for a capital offense, the burden is upon the petitioner to show facts sufficient to entitle him to bail. when those facts do not appear from the evidence adduced on the part of the prosecution.

5. **SAME—Presumptions.** When the homicide is proven or admitted, the court on an application for bail will not presume for the prisoner either justification or mitigation merely because the evidence for the prosecution fails to show their absence. Unless the evidence for the prosecution shows the presence of facts tending to justify, excuse, or mitigate the offense, the burden is on the petitioner to show them.

6. **HABEAS CORPUS—Right to Bail—Injury From Confinement— Sufficiency of Showing.** Affidavits of physicians stating that in their opinion confinement in jail will result disastrously to the petitioner, and which state no facts upon which such opinion is based, make no sufficient showing for the admission of the prisoner to bail.

7.   HABEAS CORPUS—Right to Bail—Evidence.  Evidence examined and held to justify the refusal of bail.

(Syllabus by the Court.)

Original Proceeding in Habeas Corpus.

Application of M. F. Fraley for writ of habeas corpus to the end that he be let to bail.  Cause heard and bail refused.

D. A. McDougal and Boone, Leahy & McDonald, for petitioner.—Citing: Ex parte Randon, 12 Tex. App. 155; Re Genero Lo Sasso et al., 10 L. R. A. 847; Richards v. State, 9 Tex. App. 616; McCoy v. State, 25 Tex. 33; In re Thomas, 20 Okla. 167.

Chas. West, Atty. Gen., Smith G. Matson, Asst. Atty. Gen., and L. F. Roberts, for the State.

RICHARDSON, JUDGE.  This is an original application in this court by M. F. Fraley for a writ of habeas corpus, by which he seeks to be let to bail pending the final hearing and determination of a charge of murder filed against him in Osage County. The writ was allowed, and was made returnable on May 6, 1910, on which day the respondent, R. A. Correll, sheriff of Osage County, filed his return thereto.  On said day written stipulations were also filed in this court by the attorneys for the petitioner and the state, stipulating and agreeing that on April 11, 1910, a complaint was filed against petitioner before E. L. McCain, a justice of the peace in and for Osage County, charging petitioner with the murder of one Dan Parker, upon which complaint a warrant of arrest was duly issued and served; that on April 22, 1910, petitioner's examining trial was held before said justice of the peace, upon the conclusion of which petitioner was committed without bail to answer a charge of murder in the district court; that the presence of the petitioner before this court is waived; and that this court shall hear and determine this application upon a transcript of the testimony taken at the preliminary hearing and upon certain affidavits here presented.

Petitioner contends that he should be let to bail, first, because the proof of his guilt of a capital offense is not evident or the presumption thereof great; and second, that if his guilt is

evident, the circumstances are such that the court should never-theless exercise its discretion and admit the petitioner to bail.

Petitioner did not testify in the examining trial, nor were any witnesses introduced in his behalf. The testimony taken, which is uncontradicted in this court, shows that the deceased, Dan Parker, on April 11, 1910, was sitting upon or leaning against a railing in front of a drug store in the city of Pawhuska; that he had been in that position for some ten or fifteen minutes engaged in conversation with some gentleman beside him in regard to the sale of certain walnut timber; that the petitioner came around the corner, walked up in front of the deceased, said "Hello, Dan," and without further warning immediately fired two shots into the deceased in quick succession; that the deceased jumped up, threw up his hands, staggered, and fell off the side walk. The petitioner thereupon walked around an obstruction and fired four more shots into the deceased; that the petitioner then walked off, and after going some distance, turned and came back, and putting his pistol close to the head of the deceased, snapped it a time or two and said: "You damned son of a bitch, I told you I'd kill you; you killed my boy." The substance of the foregoing facts are testified to positively by seven eyewitnesses, and they stand in the record undisputed. It is further shown that after the deceased fell off the side walk his pistol fell out of his pocket; but the evidence nowhere tends to show that the deceased ever at any time had his pistol in his hand, or that he ever made any effort or demonstration to draw it. No previous conversation or difficulty of any kind or character between the petitioner and the deceased was shown or intimated.

The testimony does not show it, but it was stated by counsel for the petitioner in presenting this case, that the deceased, some nine or ten months previously, had shot and killed the son of the petitioner, and that the deceased had been tried for the offense and had been acquitted; and it is urged here that when the petitioner saw the deceased on this occasion, the recollection of that event must have engendered in him a passion which overcame

him; that the killing was committed in the heat of such passion, was without premeditation, and therefore not murder. To this we cannot assent, even if we could take the statement of counsel as a proper substitute for testimony tending to prove the facts stated. In *Ragland v. State,* 125 Ala. 12, 27 So. 983, four hours intervening between the provocation and the killing was held as a matter of law to be sufficient cooling time to preclude the reduction of a homicide to manslaughter. *Perry v. State,* 102 Ga. 365, 30 S. E. 903, and *Rockmore v. State,* 93 Ga. 123, 19 S. E. 32, each hold three days as a matter of law sufficient cooling time. *Com. v. Aiello,* 180 Pa. St. 597, holds from one to two hours sufficient, and *State v. Williams,* 141 N. C. 827, 53 S. E. 823, holds fifteen minutes sufficient. And the authorities are all agreed that the question is not alone whether the defendant's passion in fact cooled, but also was there sufficient time in which the passion of a reasonable man would cool. If in fact the defendant's passion did cool, which may be shown by circumstances, such as the transaction of other business in the meantime, rational conversations upon other subjects, evidence of preparation for the killing, etc., then the length of time intervening is immaterial. But if in fact it did not cool, yet if such time intervened between the provocation and the killing that the passion of the average man would have cooled and his reason have resumed its sway, then still there is no reduction of the homicide to manslaughter. *Savary v. State,* 62 Neb. 166, 87 N. W. 34; *Hurst v. State,* 40 Tex. Cr. 378, 46 S. W. 635; *People v. Bush,* 65 Cal. 129, 3 Pac. 950; *Reese v. State,* 90 Ala. 624, 8 So. 818; *McNeil v. State,* 102 Ala. 121, 15 So. 352, 48 Am. St. Rep. 17; *People v. Sanches,* 24 Cal. 17; *State v. Holmes,* 12 Wash. 169, 40 Pac. 735; *Ex parte Brown,* 65 Ala. 446; *Smith v. State,* 103 Ala. 4, 15 So. 843; *Hawkins v. State,* 25 Ga. 207, 71 Am. Dec. 166; *State v. Yarbrough,* 39 Kan. 581, 18 Pac. 474; *Sparks v. Com.* (Ky.) 14 S. W. 417. If the fatal wound be inflicted immediately following a sufficient provocation given, then the question as to whether the defendant's passion thereby aroused had in fact cooled, or as to whether or not such time had elapsed that the passion of a reasonable man would

have cooled, is a question of fact to be determined upon a consideration of all the facts and circumstances in evidence; but when an unreasonable period of time has elapsed between the provocation and the killing, then the court is authorized to say as a matter of law that the cooling time was sufficient.

Ordinarily one day, or even half a day, is in law much more than a sufficient time for one's passion to cool; and a killing committed upon a provocation given some nine or ten months before is not, on account of that provocation or any passion engendered thereby, reduced to manslaughter. A deliberate killing committed in revenge for an injury inflicted in the past, however near or remote, is murder.

The uncontradicted testimony in this case convinces us that the proof of the petitioner's guilt of a capital offense is evident, and that he is not therefore entitled to bail as a matter of right. The rule was laid down by the Supreme Court of this state in the case of *In re Thomas et al.*, 1 Okla. Cr. 15, 93 Pac. 980, to the effect that, upon an application for bail by writ of *habeas corpus* after commitment for a capital offense, the burden is upon the petitioner to show that he is illegally deprived of his liberty; that is, the burden is upon the petitioner to show facts sufficient to entitle him to bail, where those facts are not shown by the evidence adduced on the part of the prosecution. This is a just and salutary rule and has been uniformly followed in this state. *Ex parte Johnson*, 1 Okla. Cr. 414, 98 Pac. 461; *Ex parte Smith*, 2 Okla. Cr. 24, 99 Pac. 893. We are not permitted to presume for the prisoner either justification or mitigation merely because the evidence for the prosecution fails to show their absence. On the contrary, unless the evidence for the prosecution shows the presence of facts or circumstances tending to justify, excuse or mitigate the offense, then the burden is upon the petitioner to make that showing by evidence at least sufficient to generate a reasonable doubt in that respect. It is the law in this jurisdiction that even in the trial of the case, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation that justify or excuse it devolves upon him, unless

the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable. Section 6854, Snyder's Comp. Laws of Oklahoma. That being true in the ultimate trial of the case where the question of the defendant's guilt or innocence, with all its momentous consequences to him, is to be passed upon, why should a different rule prevail on an application for bail, whose only purpose is to procure a release from custody during the short period of time intervening before the trial? We find in this record nothing from which it could be inferred that the petitioner acted in his necessary self-defense, either real or apparent; or that the homicide was anything else than murder. What may be disclosed upon the final trial we do not know.

The petitioner's next contention, that the circumstances are such that the court should exercise its discretion and admit him to bail, is based upon the written unverified statements of two physicians, which, however, by agreement of the attorneys on each side we here treat as affidavits, and which are as follows:

"I, Ira Mullins, (a regular practicing physician of Hominy, Oklahoma,) have been personally acquainted with M. F. Fraley for the last five years. And knowing his make up both mentally and physically as I do, I think that to keep Mr. Fraley in jail for any length of time will destroy his mind permanently or cause his death. (Signed) IRA MULLINS, M. D."

"I, Thomas M. Berry, (a regular practicing physician) do hereby declare that after being personally acquainted with M. F. Fraley for some time know him to be seriously endangered both mentally and physically by being confined in prison at this time. "(Signed) THOS. M. BERRY."

Treating these statements as affidavits, they are wholly insufficient upon which to exercise a discretionary power to admit the petitioner to bail. Neither of them undertake to state any facts whatsoever, but state only opinions and mere general conclusions. The facts upon which these opinions and conclusions are based are not before us. They should be stated in order that we may draw our own conclusions. We have a proper deference for the opinion of reputable physicians

upon. matters pertaining to their profession, but when we are called upon in a judicial capacity to act upon their opinions, we must insist upon having a statement of the facts upon which they are based. We cannot be expected to adopt their opinions without. knowing the facts and circumstances which induce them.

Bail is denied, the writ is discharged, and petitioner is remanded to the custody of the sheriff of Osage County to await his trial in due course.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.