## Ex parte H. M. THOMPSON.

No. A-4061.  Opinion Filed Sept. 19, 1921.
(200 Pac. 718.)

Application of H. M. Thompson for writ of habeas corpus to be admitted to bail. Bail allowed.

W. E. Utterback and Chas A. Coakley, for petitioner.

The Attorney General, C. W. King, Asst. Atty. Gen., and Geo. L. Sneed, Co. Atty., for respondent.

PER CURIAM. Petition of H. M. Thompson for writ of habeas corpus by which he seeks to be admitted to bail pending his trial upon a charge of murder, and where upon his preliminary examination he was held without bail, and is now confined in the county jail of Marshall county by John Glenn, sheriff of said county.

It is averred that he is not guilty of the crime of murder charged, and that the proof of his guilt is not evident nor the presumption thereof great. Attached to said petition and made a part thereof is a transcript of the testimony taken before the committing magistrate and the testimony on his application to the district court of Marshall county for admission to bail in said cause, which application was denied.

By numerous decisions of this court it is held that upon an application for bail by writ of habeas corpus after commitment for a capital offense by an examining magistrate, the burden

is upon petitioner to show facts sufficient to entitle him to bail, when these facts do not appear from the evidence adduced on the part of the state. Ex parte Dykes, 6 Okla. Cr. 162, 117 Pac. 724; In re Fraley, 3 Okla. Cr. 719, 10) Pac. 295, 139 Am. St. Rep. 988.

The evidence for the state shows that A. A. Greenman was shot and killed by H. M. Thompson, in the city of Madill, on the date alleged, between the hours of 9 and 10 o'clock p. m.

On the part of the defense two or three witnesses testified as to threats made by the deceased against the petitioner, to the effect that he had come 3,000 miles to kill him.

It appears that the deceased and petitioner had been partners in farming and stock-raising business for about two years preceding January 1, 1921; that no final settlement of the partnership affairs had been made.

Petitioner as a witness in his own behalf testified:

"I had been absent from home 9 or 10 days, having been to St. Louis, Mo., Toledo and Cleveland, Ohio. I returned to Madill on the 10th, and went to Woodville to see my father, and returned to Madill about 7 o'clock. Morris Carden told me that Mr. Greenman was in Madill looking for me, and saying that, 'he was going to kill you.' I asked him what was the matter, and he said that Greenman said, 'You know as well as I do that I worked up there for you and him and he hasn't settled up with me.' The exact words I think were 'that he had come to kill you and was going to kill you.' The next day I went with Mr. Carden to Ardmore. Before leaving Madill, Arthur Keltner told me that he asked Greenman what he was doing back here, and Greenman said, 'I have got important business here. I have traveled 3,000 miles to kill Thompson, and I am going to do it before I leave.' I asked Morris Carden to go to Greenman and tell him that I didn't want any trouble with him; that I wanted him to drop it. The next morning he told me he saw him, and

that Greenman said, 'I have traveled 3,000 miles to do this, I will not drop it.' I returned to Madill about 6:30. After supper I went down to the telegraph office, somewhere about 8:30, and sent some messages; one to the First National Bank at San Angelo, one to Dave Kelly, Oklahoma City. I had some telegrams in my hand when I left the office. I missed them when I got back to the Palace Hotel, and I drove back to the depot, where the car had been standing, to look for them. I turned around and drove back up the street from the Frisco depot. After passing the block the Royal Hotel is in I heard some one say 'Thompson.' I looked up and Bert Greenman was stepping off the sidewalk coming directly towards me, with his right hand in front of him. I had been informed about 7 o'clock that Greenman was carrying a gun inside of his shirt front. When I looked he was bringing his hand around in front of him. I pulled my gun and commenced firing without any hesitation, and fired three shots. He fell between the sidewalk and the automobile. His feet were five or six feet from the car. I thought he was going to pull a gun and shoot me. People came running up, and I said, 'Some one call a doctor, and wait until the law gets here.' Mr. Dixon came up, and asked who shot him. I said, 'I did, and I am ready to surrender to you.' "

We deem it unnecessary to further detail the testimony. We think the evidence offered is sufficient to raise an issue of manslaughter in the first degree. It follows that petitioner is entitled to be admitted to bail. It is therefore adjudged and ordered that petitioner be admitted to bail, and the same is hereby fixed in the sum of $25,000, bond to be conditional as required by law, and the same to be approved by the court clerk of Marshall county.