### TOM LAYNE v. STATE.

No. A-3603.    Opinion Filed Feb. 5, 1923.
(212 Pac. 328.)

(Syllabus.)

1.    **Judges—District Judge Assigned to Hold Court Outside His District Held de Jure or de Facto Judge.** A special or substitute judge authorized to hold court outside of his district, by virtue of an order made by the Chief Justice of the Supreme Court ending on a Saturday night, supplemented by another order beginning on Monday following, under circumstances recited in the opinion, was probably a de jure judge during the intervening Sunday.

      a.   If not a de jure judge, he was at least a de facto judge during this Sunday, with power to supervise and control the jury and other court officers through executive and ministerial orders.

2.    **Same—Supervising Power of Judge During Sunday Inadvertently Omitted from Period of Assignment.** This court may look beyond the express terms of the Constitution (section 9, art. 7), and orders made pursuant thereto, to ascertain the true intent and object of the lawmakers and of the judge acting thereunder relating to the powers of a special judge, and where such intent and object is manifestly to carry out the lawmaker's intent, an inadvertent omission of Sunday from the period in which the special judge is authorized to hold court, will not deprive such special judge of supervising power over court officers during this particular Sunday.

Appeal from District Court, Latimer County; Geo. C. Crump, Assigned Judge.

Tom Layne was convicted of murder, and he appeals. Affirmed.

Tom W. Neal and Andrews & Anderson, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty. Gen., for the State.

BESSEY, J. Tom Layne, plaintiff in error, was on March 18, 1919, in the district court of Latimer county, convicted of the murder of Powell Bobo, and sentenced to imprisonment in the state penitentiary for life. Plaintiff in error appeals.

Both the appeal and an application for a writ of habeas corpus, challenging the jurisdiction and authority of the Honorable George C. Crump, assigned judge, to preside at the concluding portion of the trial of the case after the 15th day of March, 1919, have been pending here for many months, and this question of jurisdiction is the only issue involved. No action has heretofore been taken in either case, because the plaintiff in error has been at liberty on parole or leave of absence, and hence not subject to the orders of this court.

The special judge in this case deraigned his power and authority to sit as trial judge herein by virtue of the following orders made by the Chief Justice of the Supreme Court of this state, to wit:

"It having been made to appear as provided in section 8, art. 7, of the Constitution, that the public business requires it: Therefore, pursuant to the power vested in me as Chief Justice of the Supreme Court, I do hereby designate, appoint and assign Hon. George C. Crump, regular judge of the Ninth district court judicial district, to hold court at Wilburton, Latimer county, in the Fifth district court judicial district for two weeks, to wit, commencing Monday, March 3, 1919, to and including Saturday, March 15, 1919; it being a part of the provisions of this order that two or more district judges may sit separately in said district at the same time.

"Witness, the Honorable Summers Hardy, Chief Justice of the Supreme Court of the State of Oklahoma, at Oklahoma City, Oklahoma, this the 15th day of February, 1919. Summers Hardy, Chief Justice of the Supreme Court of the State of Oklahoma."

Thereafter, on the 12th day of March, 1919, there was filed in the office of the court clerk of Latimer county, Okla., a second assignment of the Honorable George C. Crump to hold court at Wilburton, Latimer county, Okla., for one week commencing Monday, March 17, 1919, to and including March 22, 1919, as follows:

"It having been made to appear, as provided in section 9, art. 7, of the Constitution, that the public business requires it: Now, therefore, I, Summers Hardy, Chief Justice of the Supreme Court of the state of Oklahoma, do hereby designate, appoint and assign Hon. George C. Crump, regular judge of the Ninth district court judicial district, to hold court at Wilburton, Latimer county, in the Fifth district court judicial district, for one week, to wit, commencing Monday, March 17, 1919, to and including Saturday, March 22, 1919; it being a part of the provisions of this order that two or more district judges may sit separately in said district at the same time.

"Done in chambers at Oklahoma City this 10th day of March, 1919. Summers Hardy, Chief Justice of the Supreme Court of the State of Oklahoma."

The record shows that the trial of this case was commenced on March 13, 1919, and that before the trial began, to wit, on March 10, 1919, Mr. Justice Hardy made the second order, extending the period in which the special judge should preside and hold court in Latimer county until and including March 22, 1919. By reference to the two orders made by the Chief Justice, above quoted, it will be seen that there was an interval of one day, Sunday, March 16th, between the expiration of the first and the beginning of the second. The trial began on

March 13th, and was not concluded until March 18th. It is now contended that there was no judge with authority to act on Sunday, March 16th; that the jury and the officers of the court were beyond judicial control all day Sunday; that there can be no court without a judge, and that the special term automatically ended on March 15th, and that all pending unfinished business likewise automatically ended at midnight Saturday, March 15th.

The authority for making the orders assigning a district judge to hold court in some district other than his own is found in section 9, art. 7, of the Constitution, as follows:

"In case of the illness of the judge elected in any district, or if for any other cause he shall be unable to preside in the district in which he was elected, the Chief Justice may designate any district judge in the state to hold any term of court in said district in lieu of the judge elected to hold the courts of said district. Whenever the public business shall require it, the Chief Justice may appoint any district judge of the state to hold court in any district, and two or more district judges may sit in any district separately at the same time."

The reasons and purposes for assigning a judge to assist in disposing of the judicial business pending in the district court of Latimer county may be gathered from the declarations contained in the Constitution and in the orders made. In each it is recited that the public business required it. We next inquire for what period of time. Although the specific terms recited in the orders omitted Sunday, March 16th, manifestly it was the intention of the Chief Justice to empower this assigned judge to exercise judicial functions from the 3d day of March to the 22d day March, 1919. The inadvertent omission of an intervening Sunday, a day not usually devoted to judicial proceedings, did not, in our opinion, deprive the judge of supervisory power over the jury and other officers of the court on that day. We think every judge of a court of record has

an inherent supervising power to control court officers and jurors on Sunday. While a court cannot perform acts of a purely judicial nature on Sunday, the court has the right and it is his duty to preserve the rights of the parties at every stage of a trial, including Sunday, in all matters of a ministerial nature. Notes and cases cited, 1 A. R. C. 742, 743; Milligan v. Territory, 2 Okla. 164, 37 Pac. 1059; section 5917, R. L. 1910.

The statute above referred to provides:

"While the jury are absent the court may adjourn from time to time as to other business, but it is nevertheless deemed open for any purpose connected with the cause submitted to them until a verdict is rendered or the jury discharged."

In reason, this rule should apply to a partial submission to the jury, as well as to a final submission, and should carry with it all the powers necessary to accomplish its object. Of course, the expiration of the term or a final adjournment would automatically discharge the jury. A remedial constitutional or statutory provision, and proceedings had pursuant thereto, should not be so construed as to defeat any of the manifest purposes of such provision. The construction should be consistent with the object sought by the lawmakers, if clearly apparent, and excludes every other construction. 25 R. C. L. 1014, 1015, and numerous cases cited.

For the reasons stated we think the special assigned judge was a judge de jure on the Sunday in question; but, if that conclusion is incorrect, he was at least a judge de facto on that day, and until the trial was concluded. A judge de facto is one acting with color of right, and who is regarded and has the reputation of exercising the judicial functions he assumed. The acts of a de facto judge are valid so far as they affect the rights of litigants who acquiesce in judicial pro-

ceedings under the supervision of such judge. Plaintiff in error ·here made no objections touching the authority of the special judge either at the trial below or in his motion for a new trial; the question is urged here for the first time.

An objection to the jurisdiction of a special or substitute judge should be made in the court in which he assumes to have jurisdiction. An objection made after the trial comes too late, and will be deemed, on appeal, to have been waived. This rule is based upon principles of right and fair dealing. It would be manifestly unfair to permit the accused to submit to the jurisdiction of a substitute judge, in anticipation that he might in the course of the trial be acquitted, and then, if he should be disappointed in that regard, and the trial should result in a conviction, allow him to claim the right to have his conviction set aside on the ground that the appointment of the substitute judge was void or irregular. State v. Holmes, 12 Wash. 169, 40 Pac. 735, 41 Pac. 887.

The Supreme Court of Florida, in the case of Tillman v. State, 58 Fla. 113, 50 South.. 675, 136 Am. St. Rep. 100, 19 Ann. Cas., 91, said:

"Assuming that the defendant in a prosecution against him for crime could by appropriate action in the trial court in the way of pleas, objections or otherwise, have raised the question as to the authority and jurisdiction of the judge of the criminal court of record for another county to preside over the court in the trial of such case, where such judge is acting under an order of the Governor, based upon section 3871 of the General Statutes of 1906, where no objections to the authority or jurisdiction of such judge were made in the trial court and no action of any kind taken by the defendant toward raising such question, he will be deemed to have waived by his silence any such privilege or right he may have had, and will not be permitted to raise such question for the first time in the appellate court."

See Whitesell v. Strickler, 167 Ind. 602, 78 N. E. 845, 119 Am. St. Rep. 524; Lillie v. Trentman, 130 Ind. 16, 29 N. E. 405; State v. Lewis, 107 N. C. 967, 12 S. E. 457, 13 S. E. 247, 11 L. R. A. 105; Sheehan's Case, 122 Mass. 445, 23 Am. Rep. 374; State v. Ely, 16 N. D. 569, 113 N. W. 711, 14 L. R. A. (N. S.) 638, notes and annotations.

In the case of Whitesell v. Strickler, supra, the following appears:

"In the Hancock circuit court the defendant, Russell Strickler, after appearing and demurring to the complaint, excepting to the ruling, and filing his answers to the merits, moved to strike the cause from that docket, and remand the same to the Wayne circuit court, because it did not appear that the Wayne circuit judge was in any way disqualified, or that Smith was appointed special judge. This defendant at that time made no objection to the special judge sitting in the case, or to the regularity of his appointment, and all such objections, will now be deemed waived. 'A practice that would permit a party litigant to proceed for months before a de facto judge, to make issues, and obtain rulings upon legal questions involved in the controversy, and then if not satisfied with some of his rulings, or not disposed to go to trial, * * * to be able, in a moment, to arrest proceedings and oust the jurisdiction of the judge, cannot be tolerated.' Lillie v. Trentman (1890) 130 Ind. 16, 29 N. E. 405."

For the reason stated, the judgment of the trial court is affirmed.

MATSON, P. J., and DOYLE, J., concur.