STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
PATSY PILLO, DEFENDANT-APPELLANT.

Argued February 8, 1954—Reargued February 23, 1954—Decided
March 29, 1954.

100

*Mr. Joseph Tomaselli* argued the cause for appellant (*Messrs. Malandra & Tomaselli,* attorneys).

*Mr. Joseph A. Murphy* argued the cause for respondent (*Mr. Theodore D. Parsons,* Attorney-General of New Jersey, attorney).

The opinion of the court was delivered by
WILLIAM J. BRENNAN, JR., J.   The Constitution of 1947 empowers the Chief Justice to assign any county judge "to sit temporarily in the Superior Court," *Art.* XI, *Sec.* IV, *par.* 5.   In the instant case a judgment of conviction for criminal contempt was entered in a Superior Court proceeding presided over by a county judge whose authority to preside was not questioned by the defendant at any time during the course of the proceeding.   His objection that an assignment of the county judge to sit temporarily in the Superior Court must appear was made for the first time upon his appeal to the Appellate Division from the judgment of conviction.   The Appellate Division held that as "no order purporting to authorize the Judge of the County Court

judicially to officiate in the proceeding is discernible in the record" there was an omission fatal to the validity of the judgment, and accordingly reversed.

We differ with the Appellate Division in our understanding of the principle of appellate review governing this class of cases. We believe it has long been settled, in New Jersey over 60 years ago by the decision of the former Supreme Court in *Craig v. Somers*, 55 *N. J. L.* 525 (1893), and in England and in the greater number of states other than New Jersey which have also ruled on the question, 144 *A. L. R.* 1207, 1219, that, as stated at 144 *A. L. R.* 1219, "where there is original constitutional or statutory authority for an election or appointment of a special, substitute, or *pro tem* judge, and the record does not affirmatively show that the person in question could not, in any event, legally perform the functions of such a judgeship, it is the general rule that objections to the title or authority of such a judge cannot be first made upon appeal." As said in *Craig v. Somers, supra*, "the maxim applies that all things will be presumed to be rightly done" where the contrary does not affirmatively appear in the record under review in the appellate court. Indeed, even when the defect is disclosed by the record but no objection on that account is made in the proceeding itself, the objection will not be heard on appeal. *State v. Holmes*, 12 *Wash.* 169, 40 *P.* 735 (*Sup. Ct.* 1895), rehearing denied 41 *P.* 887 (1895).

A county judge temporarily assigned by the Chief Justice to sit in the Superior Court is a *pro tem* judge of the Superior Court, that is, he is assigned for the time being and during the assignment exercises all the functions of a Superior Court judge except as limited by the terms of the assignment. The constitutional power of the Chief Justice is not confined to the assignment of a county judge to be a special judge in the Superior Court, that is, a judge assigned to act in a particular case. *Craig v. Somers, supra*; and see *State ex rel. Hodshire v. Bingham*, 218 *Ind.* 490, 33 *N. E.* 2d 771, 134 *A. L. R.* 1126 (*Sup. Ct.* 1941). The assignment, whatever its form, will therefore not in the nature of things

ordinarily find its way into the records of individual cases. It will be observed that neither the Constitution nor any rule of court makes provision for spreading the evidence of the assignment upon the record of each cause in which the county judge may sit. The practice is to file the original of the assignment with the Clerk of the Supreme Court and a copy in the office of the Administrative Director of the Courts at Trenton. "His appointment, therefore, is no part of the record of any particular case which may be tried before him," and there being nothing upon the record before the Appellate Division "to show a want of authority * * * it must be presumed that the court was duly constituted," and it was error to infer the contrary "from the fact that it [the assignment] does not appear in the record." *Craig v. Somers, supra.*

The objection does not go to the Superior Court's jurisdiction of the subject matter. The criminal contempt proceeding was properly brought in that court. The charge was based upon Pillo's willful refusal to answer certain questions before the Burlington County grand jury as directed by an order of the Superior Court entered to comply with the mandate of this court which followed our opinion in *In re Pillo,* 11 *N. J.* 8 (1952). The asserted defect goes merely to the right and authority of the county judge to preside in a cause within the jurisdiction of and pending in the Superior Court.

 ■ ■ It will be noted that the key element invoking this rule of appellate review is that there exists "original constitutional or statutory authority" for the assignment of the judge. *Craig v. Somers, supra,* involved statutory authority, but the principles there laid down apply equally here when the authority has a constitutional source. Present either such authority, the judge, who by hypothesis may be authorized to sit, and actually sits, is at least a *de facto* judge as to the public and third parties. If a *de jure* status under a formal *pro tem* assignment does not appear he is within the first category of the four classes of *de facto* judicial officers set forth in the leading and oft-cited decision of the Con-

necticut Supreme Court of Errors in *State v. Carroll*, 38 *Conn.* 449, 9 *Am. Rep.* 409, 427 (1871), that is, although he may sit without a known appointment, nevertheless he sits under "such circumstances of reputation or acquiescence as are calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be." See *Byer v. Harris*, 77 *N. J. L.* 304, 309 (*Sup. Ct.* 1909), where *State v. Carroll* was followed. We take judicial notice of the practice which is common throughout the State, certainly known to the entire bar of the State, of having county judges preside in Superior Court civil matters. They do so daily in the counties which integrate the law lists pending in the Superior and County Courts, except as otherwise provided in *R. R.* 1:31–1(*a*) (formerly *Rule A–18*), as to proceedings in lieu of prerogative writs "which shall only be heard by a judge of the Superior Court," or "matters which can only be heard by a judge of the Superior Court," or "only by an Assignment Judge." The practice of assigning County Court judges to sit temporarily in the Superior Court was initiated immediately upon the coming into effect on September 15, 1948 of the new Judicial Article and the rules of court. The practice has been one of the important reasons for the present satisfactory status of our trial lists throughout the State. The failure of appellant's counsel in the instant case to interpose an objection before the county judge to the authority of the judge to sit is itself evidence of the widespread knowledge and acceptance of the practice by the bar.

■ Having at least a *de facto* status, the objection to the authority of the *pro tem* judge to sit must be deemed to have been waived if not made in the court in which he assumes to preside. Any other rule would defeat, not aid, the cause of justice. In this very case appellant had only to suggest the question during the proceeding and the facts as to the existence or non-existence of evidence of the assignment could have been immediately ascertained from the office of the Administrative Director of the Courts and the evidence have been speedily supplied before the hearing proceeded.

As was said in *Layne v. State,* 23 *Okl. Cr.* 36, 212 *P.* 328, 330 (*Okla. Crim. Ct. App.* 1923):

> "It would be manifestly unfair to permit the accused to submit to the jurisdiction of a substitute judge, in anticipation that he might in the course of the trial be acquitted, and then, if he should be disappointed in that regard, and the trial should result in a conviction, allow him to claim the right to have his conviction set aside on the ground that the appointment of the substitute judge was void or irregular."

In summary, the county judge who presides in a Superior Court matter, at least in a cause not within the limitations of *R. R.* 1:31–1(*a*) or excluded by the terms of his assignment—a question not before us and as to which we expressly reserve opinion—sits as a judicial officer with color of right and his acts will be presumed to have been done with authority unless the contrary affirmatively appears upon the record under review, and in any event objection to his authority to preside must be seasonably made in the proceeding in which he assumes to sit, and will not be heard if first made upon appeal.

Another facet of the instant case requires mention. The Appellate Division's opinion was filed July 27, 1953, and a mandate of reversal issued in ordinary course. Thereafter, on September 8, 1953, the Appellate Division purported to "recall" the mandate upon the State's petition for reconsideration filed August 17, 1953, based upon the entry of a *nunc pro tunc* order of the Chief Justice dated August 7, 1953, made effective as of December 29, 1952, assigning the county judge temporarily to sit in the Superior Court. Meanwhile, however, the State on August 27, 1953, filed a timely petition for certification from the original judgment of reversal and sought and was here granted leave pending determination of that petition to proceed in the Appellate Division with the application to that court for reconsideration. The Appellate Division, after argument, directed the issuance of a new mandate affirming the judgment of con-

viction, and it is this judgment which is before us upon defendant's appeal.

Defendant contends that the Appellate Division was without jurisdiction to "recall" its mandate. But the mandate was not operative when the recall order of September 8, 1953 was made. The State's then pending petition for certification to review the judgment embodied in the mandate effected the suspension of the force of the mandate pursuant to *Rule* 4:4–6(*b*), now *R. R.* 2:9–1(*b*). In that circumstance the express leave granted the State by this court to proceed with the application for reconsideration before the Appellate Division was sufficient warrant to bring the cause before that court for the purpose of such reconsideration. We need not and do not decide the scope of the power of the Appellate Division to recall its mandate in other circumstances. See 3 *Am. Jur., Appeal and Error,* §§ 1263 *et seq., pp.* 752 *et seq.; Daniel v. Elmer,* 113 *N. J. L.* 227 (*Sup. Ct.* 1934).

The appellant advances a number of points on his brief why the *nunc pro tunc* order should be declared ineffective and void. But the *nunc pro tunc* order plays no part in our conclusions, and the points need not be considered. It suffices that by failing to interpose a timely objection before the county judge the appellant waived any objection to the authority of the county judge to preside.

Defendant raised several objections at the hearing dealing largely with the sufficiency of the State's proofs and put in no defense after the denial of his motion for dismissal of the charges at the end of the State's case. We infer from the Appellate Division's opinion leading to the original judgment that error in the admission of proofs and their alleged insufficiency to support a conviction were urged upon the appeal to that court. However, those points are not argued on this appeal, and while for that reason we need not consider them, we have examined them as they appear in the transcript of the hearing and are satisfied that they are without merit.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, BURLING, JACOBS and BRENNAN—5.

*For reversal*—Justices HEHER and WACHENFELD—2.